TOWN & COUNTRY DODGE, INC v DEPARTMENT OF
TREASURY

STAR LINCOLN-MERCURY, INC v DEPARTMENT OF TREASURY

McINERNEY, INC v DEPARTMENT OF TREASURY

Docket Nos. 70437, 70438, 70554. Argued January 5, 1984 (Calendar
No. 11).—Decided December 28, 1984. Released January 14,
1985. Rehearings denied 421 Mich 1202.

Town & Country Dodge, Inc., Star Lincoln-Mercury, Inc., and
McInerney, Inc., appealed assessments by the Department of
Treasury of single business tax deficiencies to the Michigan Tax
Tribunal. The tribunal upheld the assessment in each case. The
Court of Appeals, Allen and Penzien, JJ. (M. F. Cavanagh, P.J.,
dissenting), affirmed in *Town & Country* and *Star Lincoln-Mercury* (Docket Nos. 58068, 58069), and Danhof, C.J., and Bronson
and Cynar, JJ., denied the petitioner's delayed application for
leave to appeal in *McInerney* (Docket No. 66853). The petitioners appeal, alleging that money received from the financial
institutions that finance their inventory in return for assigning
time-price differential purchase agreements entered into by
their customers is interest income and should be subtracted
from their single business tax bases.

In an opinion by Justice Ryan, joined by Chief Justice Williams
and Justices Kavanagh, Levin, Brickley, and Boyle, the Supreme
Court *held:*

Money returned to the petitioners either as a portion of the
finance charge paid on their floor plan financing or as part of
the finance charge that a customer pays the financial institution, is not interest income within the meaning of the Single
Business Tax Act. The money returned to the petitioners is
business income that is properly included in the tax base upon
which the single business tax is calculated.

1. The single business tax, although not a pure value added
tax, is best understood as a value added tax. The Single
Business Tax Act imposes a specific tax on the adjusted tax
base of every person with business activity in this state. Tax

REFERENCE FOR POINTS IN HEADNOTE
71 Am Jur 2d, State and Local Taxation § 524.

base is defined as business income subject to adjustments specified in the act. Business income is defined as federal taxable income. The act allows certain adjustments to business income, either subtractions from or additions to income, prior to the computation of the tax. In calculating the tax base, the starting point is business income, to which the adjustments are made. The adjustment at issue in these cases is the subtraction of interest from business income to the extent included in federal taxable income.

2. In general, exemptions from taxation are not favored, and statutory exemptions from taxation are construed strictly against the taxpayer. The propriety of a deduction does not turn upon general equitable considerations, but upon legislative grace; only where there is clear provision for an exemption can any particular deduction be allowed. In these cases, the tax deficiencies assessed against the petitioners must stand. If the facts are as the Department of Treasury contends, a rebate from the financial institution to the petitioners, whether paid at one time or monthly, is simply not interest. Although money over and above the base price paid by a customer to the financial institution is interest income in the hands of the financial institution, any amount of that money returned to the petitioners is not money paid for the use of or forbearance from use of money. Likewise, if the facts are as the petitioners have claimed, they are not entitled to relief. A rebate or return of a portion of the finance charges that the petitioners have paid in connection with the floor plan financing of their inventories is not money paid to them for the use of money or forbearance or delay in use of money. Addition of interest expense on the floor plan financing to the petitioners' business income is mandated by the act. Although generally accepted accounting principles may require that a return of a portion of that interest be credited on the petitioners' books as an interest refund, a refund of interest is not interest income within the meaning of the act which is to be subtracted from the tax base.

Affirmed.

118 Mich App 778; 325 NW2d 577 (1982) affirmed.

TAXATION — SINGLE BUSINESS TAX — TAX BAN.

Money returned to an automobile dealer by a floor plan financer either as a portion of the finance charge paid on floor plan financing or a part of a finance charge paid to the financer by the dealer's customers is not interest income subject to subtraction from the dealer's single business tax base (MCL 208.9; MSA 7.558[9]).

*Law Offices of Lawrence J. Stockler, P.C.* (by *Lawrence J. Stockler*), for the petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck,* Assistant Attorneys General, for the respondent.

RYAN, J. We are called upon to determine, within the context of automobile dealer financing, whether certain payments to dealerships by financial institutions are "interest" for the purpose of the Single Business Tax Act (SBTA), MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.,* and are thus excludable from the single business tax base. We decide that those payments are not interest and that the monies received are properly included in the tax base upon which the single business tax is assessed.[1]

---

[1] Apart from the issues we undertake to resolve here, appellants assert a plethora of other, essentially constitutional, claims, to wit: Was there an erroneous ruling as a matter of law by the Court of Appeals in holding that the administrative agency's hearing referee (Tax Tribunal) had the power to rule on the constitutionality of the single business tax? Is there a natural, fundamental, and constitutional right to engage in business, protected by the Fourteenth Amendment to the federal constitution? Can a state impose a tax upon the exercise of a fundamental constitutional right? Is the right to engage in business a fundamental right retained by the people by virtue of the Ninth Amendment to the federal constitution and art 1, § 23 of the Michigan Constitution? Does the Single Business Tax Act impose double taxation of income as a matter of law, in violation of art 9, § 3 of the Michigan Constitution of 1963? Is the single business tax imposed as a matter of law, an income graduated as to rate or base, in violation of art 9, § 7 of the Michigan Constitution?

The Court of Appeals noted that none of the issues before that Court were raised in the Tax Tribunal, and that the failure to raise an issue below precluded appellate review.

Notwithstanding the issue whether the Michigan Tax Tribunal has or had jurisdiction to entertain constitutional issues, the first time to raise those issues is not at the appellate level. Appellants either could have raised those issues in the Tax Tribunal in order to preserve them for appeal, or they could have brought an action for declaratory judgment in circuit court. Appellants followed neither course of action. We decline to consider those issues at this stage of the

## I. PROCEDURAL HISTORY

Appellants operate automobile dealerships. Each appellant has been assessed a single business tax deficiency by the Michigan Department of Treasury. Each dealership appealed to the Michigan Tax Tribunal from a final determination of the single business tax deficiency assessed against it. In case No. 70437, Town & Country Dodge, Inc., was assessed a deficiency of $3,956.10 by final determination dated October 17, 1980, for the tax years 1976 to 1977. In case No. 70438, Star Lincoln-Mercury, Inc., was assessed a deficiency of $14,849.11 by final determination dated November 26, 1980, for the 1976 through 1979 tax years. In case No. 70554, McInerney, Inc., was assessed a deficiency of $18,945.50, by a final determination dated March 29, 1982, for the 1976 through 1978 tax years.

The dealerships filed appeals in the Michigan Tax Tribunal.[2]

Town & Country Dodge moved for summary judgment in its case, and the defendant Department of Treasury moved for summary judgment in the Star Lincoln-Mercury case. In neither case did the movant specify the subrule of GCR 1963, 117 upon which it was relying.[3] The Tax Tribunal issued identical opinions in both cases, upholding

litigation. We note also that many, if not all, of those issues were resolved against appellants' attorney in *Stockler v Dep't of Treasury,* 75 Mich App 640; 255 NW2d 718 (1977), *lv den* 402 Mich 802 (1977), *app dis* 435 US 963 (1978).

[2] Town & Country Dodge filed its appeal on December 9, 1980; Star Lincoln-Mercury filed its appeal on December 12, 1980; and McInerney, Inc., filed its appeal on April 19, 1982.

[3] Thus, it is unclear whether Town & Country Dodge was asserting that the Department of Treasury had "failed to state a valid defense to the claim asserted," GCR 1963, 117.2(2), or that "there is no genuine issue as to any material fact," GCR 1963, 117.2(3). Similarly, we have no way of knowing whether the claim of the Department of

the Department of Treasury's tax deficiency assessments.[4]

McInerney also appealed its assessed tax deficiency to the Tax Tribunal. The Department of Treasury moved for summary judgment pursuant to GCR 1963, 117.2(1), asserting that the issue of law raised by the petitioner had previously been determined by the tribunal. On July 16, 1982, the Tax Tribunal granted summary judgment against petitioner McInerney based, *inter alia,* on the authority of that tribunal's decisions in *Town & Country Dodge, Inc,* and *Star Lincoln-Mercury.*

Town & Country Dodge and Star Lincoln-Mercury filed claims of appeal with the Court of Appeals, and those cases were consolidated on appeal there. The Court of Appeals affirmed the decisions of the Michigan Tax Tribunal, Judge

Treasury, in the Star Lincoln-Mercury case, was that the dealership "failed to state a claim upon which relief can be granted," GCR 1963, 117.2(1), or that "there is no genuine issue as to any material fact," GCR 1963, 117.2(3).

[4] The Tax Tribunal decision was entitled "Opinion and Judgment on Motion for Summary Judgment." Although it affirmed the tax deficiencies assessed by the Department of Treasury, the tribunal did not specifically grant summary judgment in favor of the Department of Treasury or against Town & Country Dodge or Star Lincoln-Mercury, and it did not specify according to which subrule, GCR 1963, 117, if any, judgment was rendered. In neither case was the motion for summary judgment accompanied by affidavits that would be required by GCR 1963, 117.3 if the motion were made pursuant to GCR 1963, 117.2(3).

The Tax Tribunal apparently granted the Department of Treasury's motion for summary judgment in Star Lincoln-Mercury, Inc. Although, in Town & Country Dodge, the Department of Treasury did not move for summary judgment, the Tax Tribunal affirmed the assessed tax deficiency. The Tax Tribunal Rules do not provide explicitly for motions for summary judgment. However, 1979 AC, R 205.1111(3) provides, *inter alia,* that where there is no applicable rule, the Michigan General Court Rules of 1963 are to govern. In addition, Tax Tribunal procedure provides that all requests to the tribunal be made by written motion, that pleadings on motions be limited to the motion and brief in support thereof and a single response in objection thereto with supporting briefs, and that oral argument is not allowed on motions except on order of the tribunal. 1979 AC, R 205.1230(1), (2), (4).

M. F. Cavanagh, *dissenting.* 118 Mich App 778; 325 NW2d 577 (1982). That Court also denied rehearing of those two cases on October 7, 1982, with Judge Cavanagh indicating that he would grant rehearing.

McInerney filed a delayed application for appeal with the Court of Appeals. On May 13, 1983, the Court of Appeals denied the delayed application for appeal based, *inter alia,* on the authority of *Town & Country Dodge v Dep't of Treasury.*

Town & Country Dodge, Star Lincoln-Mercury, and McInerney then sought leave to appeal to this Court. We granted leave to appeal, and further ordered all three cases to be argued and submitted to the Court together. 417 Mich 1054; 335 NW2d 474 (1983).

## II. Facts

Appellants transact business with their customers by at least three methods: (1) sale for cash, (2) sale with outside financing, and (3) sale with financing obtained from a third party through appellants. It is the third method of financing that gives rise to the issue here.

In a typical transaction, the vehicle is sold to the customer, after negotiation, and the total price for the vehicle is determined by the price of the vehicle, together with its options and accessories. A contract is then formed between the dealer and the customer for the sale of a particular vehicle. After the contract has been agreed upon, the proper paperwork necessary to effect transfer of title is completed.

When a purchaser eschews, for whatever reason, either a cash deal or private financing of the automobile, the appellants assist the customer in financing the purchase by entering into a time-price

differential agreement with the customer. The customer agrees to pay for the vehicle over a certain period of time. The time-price differential charge includes the cash price of the vehicle, plus financing charges. The contract is then sold or assigned to a financial institution.

It was represented to us in oral argument that, in order to induce automobile financial institutions to agree to finance a dealer's inventory under so-called floor plan financing agreements, dealers sometimes, but may not always, sell or assign individual time-price differential purchase agreements to the financing institution which carries the dealer's floor plan financing. When a time-price differential purchase agreement is assigned to a financial institution by a dealer, the dealer is "repaid," in some fashion, a small sum by the financial institution on each purchase agreement. That amount has been variously characterized by the parties as a kickback, a rebate, a credit, a finder's fee, a discount, a commission, or a refund of interest paid. The correct characterization of the money received by the appellants from the financial institutions is critically important to this litigation. Appellants claim that the money they receive from the financial institutions is "interest income."[5]

At one point in this litigation, the appellant Town & Country Dodge offered the following example of a typical transaction of the kind described above:

"Customer A buys a Lincoln Continental or a Chrysler New Yorker for $10,000. He puts down a deposit of $2,000.00. $8,000 is to be financed over three (3) years at 16%. This means if customer has $8,000 there are no time-price differential charges and if the customer does

---

[5] The significance of that claim will shortly become evident.

not have $8,000 then it is financed at 16%. It is $26.57 time-price differential charge per $100 or a total of $2,125.60 of time-price differential charge, making total payments to the dealer on the contract of $10,125.60. See Thorndike Encyclopedia Banking and Financial Tables, Rev Ed as published by Warren, Gorham & Lamont, 1980 ed, p 18-2, for Finance Charge Tables.

"The Dealer takes the contract and predicated upon a three (3) year contract, is now going to discount this $10,125.60 note to the appropriate financial institution. A draft is drawn on the bank account of the financial institution or the financ[ial] institution remits its own check for the amount of $8,000 plus a portion of the time-price differential charge. For example, there has been no evidence to indicate this, but for which the appellants would be willing to so prove that approximately in the year of 1979, $70,000 per year was the amount of time-price differential charge being retained by the dealer when it has discounted its note and assign [sic] its contract to the financial institution. Consequently, the dealer would then have a draft in the amount of $8,210 of its own, discounting the note, leaving the difference of the time-price differential charge as profit to the financial institution. In turn, the buyer would pay the financial institution directly on a thirty-six (36) monthly installment basis, in dividing the $10,125.60 by thirty-six (36) months or approximately $281.27 monthly payments. *At this point, there is only one (1) check given or taken upon a draft by the dealer and there are no more funds being received by the dealer from the financial institution.* The buyer bought a car. The dealer discounted the paper to the financial institution. The buyer instead of paying off the installment purchase to the dealer is now making the installment plan payment to the financial institution. THUS, THERE IS NO LENDING OF MONEY TO THE BUYER. IT IS A PURCHASE OF A VEHICLE WITH A DISCOUNTING OF NOTE AND AN ASSIGNMENT OF A CONTRACT FROM THE DEALER TO THE FINANCIAL INSTITUTION. As 'Friday' would say in the program 'Dragnet,' these are the facts Your Honors, these are the facts and just the facts and nothing but the facts.

"In the event that the time-price differential agree-

ment is paid off on a shorter basis, or that there is a default by the buyer resulting in a loss to the financial institution, there is a proportionate share of the time-price differential charge charged back to the dealer, that is, there is a recourse as to that proportion of three (3) years time-price differential charge that has been retained by the dealer. For example, if the note is paid within two (2) years then the dealer has a charge back of the one (1) year time-price differential charge that he has retained, inasmuch as such time-price differential charge has not been earned and in fact has been prepaid. To meet the requirements of Regulation Z or the Truth in Lending Act, a refund or discount to the buyer is required for such prepayment." Motion for Rehearing *(Town & Country Dodge, Inc*, and *Star Lincoln-Mercury, Inc)*, Court of Appeals, pp 3-4. (Emphasis in original.)

## III. SINGLE BUSINESS TAX

The characterization of the relatively small sum of money that the dealer receives back from the financial institution on each "deal" is the crux of this litigation. If that money is "interest income," it is subtracted from the appellant's single business tax base.

The Single Business Tax Act (SBTA), enacted as 1975 PA 228, MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.,* was new and experimental legislation in this state. The single business tax (SBT) is best understood as a value added tax, although it is not a pure value added tax. Haughey, *The Economic Logic of the Single Business Tax,* 22 Wayne L Rev 1017, 1024-1027 (1976); McKim, *The Single Business Tax Taxpayer,* 22 Wayne L Rev 1043 (1976); Haughey, *The Michigan Single Business Tax— Background and Objectives,* 55 Mich St Bar J 262, 266-267 (1976).

The SBT imposes a specific tax of 2.35% on the adjusted tax base of every person with business

activity in this state. MCL 208.31(1); MSA 7.558(31)(1). "Tax base" is defined as business income subject to the adjustments in subsections (2)-(9). MCL 208.9(1); MSA 7.558(9)(1). "Business income" is further defined as federal taxable income. MCL 208.3(3); MSA 7.558(3)(3). The SBTA, § 9, allows certain "adjustments" to business income, either subtractions from or additions to, prior to the computation of the tax. MCL 208.9; MSA 7.558(9). See, generally, 1 CCH Michigan Tax Reporter, ¶¶ 15-001—19-507.

In calculating the tax base, the starting point is business income, to which § 9 adjustments are made. One such adjustment requires the *addition* to business income of "compensation," MCL 208.9(5); MSA 7.558(9)(5), as well as dividends, *interest,* and royalties *paid* by the taxpayer, to the extent deducted from federal taxable income, MCL 208.9(4)(d), (f), (g); MSA 7.558(9)(4)(d), (f),. (g). Another adjustment, the one here at issue, allows for the *subtraction* from business income, to the extent included in federal taxable income, of dividends, *interest,* and royalty *income.* MCL 208.9(7)(a), (b), (c); MSA 7.558(9)(7)(a), (b), (c). See, generally, Kasischke, *Computation of the Michigan Single Business Tax: Theory and Mechanics,* 22 Wayne L Rev 1069 (1976). The subtraction of the taxpayer's interest income from business income is "[c]onsistent with value added theory, since receipt of this income does not result from use of capital by the recipient." Kasischke, *supra,* 22 Wayne L Rev, p 1081.

Thus, the issue in this case is whether the money received by the appellants from the financial institutions is interest within the meaning of § 9 of the SBTA. If the amount paid to the dealer, in whatever form, by the financing institution is "interest income," then that sum was properly

deducted from "business income" on appellants' SBT return and the subsequent tax deficiency assessments by the defendant were improper because the amount rebated was properly excludable from the appellants' tax base upon which the single business tax is computed. However, if the money is not "interest income," it is business income that is properly included in appellants' single business tax base, upon which the tax is computed.

The parties have taken divergent positions in their respective accounts of the facts concerning the transaction in dispute and that disparity is aggravated because, in their travels upward through the appellate system, the dealerships have changed their version of the facts at each level of appeal. We think, however, that the shifting factual claims of the parties are not such as to create a "genuine issue concerning any *material* fact," GCR 1963, 117.2(3), and that these cases were correctly resolved in the Tax Tribunal as a matter of law.

In *Town & Country Dodge, Inc,* and *Star Lincoln-Mercury, Inc,* the Tax Tribunal stated that the appellants sold or assigned the financing paper to various institutions at a discount, and, in return, the assignee (financial institution) rebated to the appellants a small portion of the monthly payments made by the customer pursuant to the original time-price differential financing agreement. In *McInerney, Inc,* the Tax Tribunal stated that McInerney assigned the contract of sale to various lending institutions at a discount, and that McInerney received in return a portion of the time-price differential charge from the assignee.

Although, as we have said, the small sum of money returned to appellants on each deal has been variously characterized by the parties and

the tribunals below as a kickback, as a rebate, as a finder's fee, as a credit, as interest paid to appellants, as a discount, and as a refund on interest that appellants have paid, for the sake of discussion we will refer to that sum as a "rebate."

Since the rendition of the Tax Tribunal's decisions, appellants have asserted, in the Tax Tribunal, the Court of Appeals, and this Court, that the Tax Tribunal's description of the transaction at issue is incorrect, although appellants have done very little at any stage to clarify the facts surrounding the transaction. The majority of the Court of Appeals, in *Town & Country Dodge* and *Star Lincoln-Mercury,* found that the sums rebated to the appellants are in the nature of a finder's fee or a kickback. 118 Mich App 786. The majority also stated that even if the finance charges constituted "interest" to the financial institution that received monthly payments from the customer, the money rebated to appellants was not "interest" since the rebates were not payment for the use or loan of money. Dissenting Judge CAVANAGH concluded that the rebates were indeed interest and that the failure to treat the payments as interest would violate the *public policy* of the SBT.

In this Court, appellants filed what they termed "Response to Counter-Statement of Facts." Therein, appellants raise for the *first time* the topic of floor plan financing. The facts of the transaction in issue, as asserted in this "Response," are significantly different than those that were asserted by appellants' counsel previously. Appellants now state that the financial institutions involved are those that finance the purchase of the vehicles by the appellants under a floor plan system, that financial institutions are reluctant to "get involved" in floor plan financing unless they in turn receive the assignment of the time-price

differential purchases and financing agreements between the dealer and his customers, that the retail purchase of the vehicles by the customers from the appellants is where the financial institutions make their profit, not from floor plan financing, and that the *interest* that appellants pay on their floor plan financing to the financial institutions is an *interest expense* which is included in the tax base for the computation of the single business tax.

Moreover, appellants now assert that when they assign their customers' notes and security agreements to the financial institutions involved what they receive in return is a partial refund of the floor plan financing interest they have previously paid. Appellants characterize this rebate as a credit to the appellants' interest expense. Appellants further state that this "refund of the floor plan financing" is properly included as "interest income" since it is the opposite side of the "T" account in the appellants' ledger. The refund of this interest on floor plan financing is reflected in the appellants' accounting journal as "interest income" since it is a credit to interest expense. Appellants assert that the following occurs:

"A. The financial institutions involved, which participate with the Appellants in the floor plan financing, are then given their appropriate share of the assignment of loan documents from Appellants' customers whereby a greater profit is made by such financial institutions.

"B. The Appellants are able to obtain floor plan financing by assigning the documents as executed by their customers to the financial institutions involved.

"C. That the Appellants, as automobile dealers participating in the floor plan financing, pay interest expense which is included in the gross amount for which the basis of the Single Business Tax is computed.

"D. That pursuant to Generally Accepted Accounting

Principles (GAAP), *the refund of the interest expense is now credited with the interest refund making it, in effect, 'interest income' which is now deleted from the total basis which is determined for the computation of the Single Business Tax."* Response to Counter Statement of Facts, p 3. (Emphasis added.)

It is regrettable that the appellants' counsel has repeatedly, throughout the course of this litigation, altered the description of facts which are said to underlie a typical third-party financing agreement, even to the point of offering a new version of the facts before this Court. Upon careful consideration, however, we are persuaded that, under any of the factual patterns described at various stages of this litigation, the sums rebated to the dealerships by the financial institutions in the third-party financing arrangements are not sums paid for the use of or forbearance from use of money and, consequently, are properly includable in appellants' tax base for SBT purposes.

## IV. ANALYSIS

The appellants argue that the time-price differential charges paid by the customer to the financial institutions are "interest." However, the Department of Treasury concedes that those charges are "interest or at the very least in the nature of interest." The question for resolution is simply whether that amount of the finance charge which is rebated to the appellants by the financial institutions and which is concededly interest in the hands of the *financial institutions,* is interest or can properly be characterized as interest in the hands of the appellants.

The term "interest" is not defined in the SBTA. However, the SBTA provides that "[a] term used in this act and not defined differently shall have

the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required. A reference in this act to the internal revenue code includes other provisions of the laws of the United States relating to federal income taxes." MCL 208.2(2); MSA 7.558(2)(2).

The parties have not cited comparable federal statutory authority concerning the definition of interest, nor have we located any statutory authority to that effect. As noted previously, the SBTA requires that terms not defined in the act shall have the same meaning, *as when used in comparable context* in the laws of the United States relating to federal income taxes. The uniqueness of the SBTA militates against locating federal authority that is in "comparable context." Section 61 of the Internal Revenue Code, 26 USC 61, provides that gross income includes "interest," but it does not define it.

Notwithstanding the uniqueness of the SBTA, we assume that since the SBTA does not define the term "interest," the Legislature intended that the word was to be construed according to its ordinary and primarily understood meaning. A fundamental rule of statutory construction is that the court is obligated to ascertain and give effect to the intention of the Legislature, and it is equally axiomatic that words are to be given their ordinary, normally accepted meaning. *American Telephone & Telegraph Co v Employment Security Comm,* 376 Mich 271, 279; 136 NW2d 889 (1965) (opinion of O'HARA, J.).

In *Deputy v DuPont,* 308 US 488; 60 S Ct 363; 84 L Ed 416; 40-1 USTC ¶ 9161 (1940), the United States Supreme Court was called upon to interpret the phrase "interest paid or accrued  *  *  *  on

indebtedness" found in the Revenue Act of 1928, 45 Stat 791, ch 852. (That phrase is substantially similar to the current language, which provides: "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." IRC 163.) The Supreme Court noted that it was dealing with words which, in the context of a revenue act, had a well-known meaning.

"In the business world 'interest on indebtedness' means compensation for the use or forbearance of money. In absence of clear evidence to the contrary, we assume that Congress has used these words in that sense. In sum, we cannot sacrifice the 'plain, obvious and rational meaning' of the statute even for the 'exigency of a hard case'. See *Lynch v Alworth-Stephens Co,* 267 US 364, 370 [69 L Ed 660, 662; 45 S Ct 274 (1925)]." 308 US 498.

See *Old Colony R Co v Comm'r of Internal Revenue,* 284 US 552, 560; 52 S Ct 211; 76 L Ed 484; 3 USTC ¶ 880 (1932) (as respects "interest," the usual import of the term is the amount which one has contracted to pay for the use of borrowed money); *Brown v Hiatts,* 82 US (15 Wall) 177, 185; 21 L Ed 128 (1872) ("interest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention").

Michigan's statutory scheme provides that "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a; MSA 2.212(1). Statutes are to be construed according to that edict, unless such construction would be in-

consistent with the manifest intent of the Legislature. MCL 8.3; MSA 2.212. See *State ex rel Wayne County Prosecuting Attorney v Levenburg,* 406 Mich 455, 465; 280 NW2d 810 (1979) (in absence of statutory definition or controlling judicial definition, the words in a statute ordinarily must be construed according to their common and approved usage); *People ex rel St Mary's Falls Ship Canal Co v Auditor General,* 7 Mich 84, 93 (1859) (the words of a statute must receive a construction consistent with the ordinary import of the words employed, unless a different one is obviously contemplated); *Green v Graves,* 1 Doug 351, 354 (Mich, 1844) (the words of a statute are to be taken in their ordinary signification and import).

Without regard to whether the term "interest" is a familiar word which is to be interpreted according to its ordinary and commonly understood meaning, or whether it is a technical word to be interpreted according to its specialized or peculiar meaning, the parties really do not disagree as to its definition.

Interest is compensation allowed by law or fixed by the respective parties for the use or forbearance of money, "a charge for the loan or forbearance of money," or a sum paid for the use of money, or for the delay in payment of money. *Balch v Detroit Trust Co,* 312 Mich 146, 152; 20 NW2d 138 (1945); *Coon v Schlimme Dairy Co,* 294 Mich 51, 56; 292 NW 560 (1940); *Marion v Detroit,* 284 Mich 476, 484; 280 NW 26 (1938); *Drennan v Herzog,* 56 Mich 467, 469; 23 NW 170 (1885). See also 47 CJS, Interest & Usury, § 3, pp 18-22.

We note in passing that, in general, exemptions from taxation are not favored, see *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 669-670; 242 NW2d 749 (1976); *Edison v*

*Dep't of Revenue,* 362 Mich 158, 162; 106 NW2d 802 (1961); *Romeo Homes, Inc v Comm'r of Revenue,* 361 Mich 128, 137; 105 NW2d 186 (1960); *St Matthew Lutheran Church v Delhi Twp,* 76 Mich App 597, 599; 257 NW2d 183 (1977), and that statutory exemptions from taxation are construed strictly against the taxpayer, *American Concrete Institute v State Tax Comm,* 12 Mich App 595, 606-607; 163 NW2d 508 (1968). See also *Comm'r v National Alfalfa Dehydrating & Milling Co,* 417 US 134, 148-149; 94 S Ct 2129; 40 L Ed 2d 717, 727; 74-1 USTC ¶ 9456 (1974) ("The propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence. Rather, it 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.' *New Colonial Ice Co v Helvering,* 292 US 435, 440; 78 L Ed 1348; 54 S Ct 788 [1934]").

Applying the foregoing law to the various factual outlines that have been presented to the Tax Tribunal, the Court of Appeals, and this Court in these cases, we are required to conclude that the tax deficiencies assessed against appellants must stand. If the facts are as the Department of Treasury contends, a rebate from the financial institution to the appellants, whether paid at one time or on monthly payments, is simply not interest. Although money over and above the base price paid by a customer to the financial institution is interest income in the hands of the financial institution, any amount of that money returned to appellants is not money paid for the use of or forbearance from use of money. Thus, the rebate is not interest income in the hands of the appellants.

Likewise, if the facts are as the appellants have claimed in this Court, appellants are not entitled

to relief. A rebate or return to the appellants of a portion of the finance charges that appellants have paid in connection with the floor plan financing of their inventories is not money paid to the appellants for the use of money or forbearance or delay in use of money. The appellants' addition of interest expense on their floor plan financing to business income is mandated by MCL 208.9(4)(f); MSA 7.558(9)(4)(f). Although generally accepted accounting principles may require that a return of a portion of that interest be credited on appellants' books as "interest refund," a refund of interest is not "interest income" within the meaning of the SBTA which is to be subtracted from the tax base, MCL 208.9(7)(b); MSA 7.558(9)(7)(b).

A fundamental error made by appellants, under any factual scenario thus far proposed, is the assumption that monies that are concededly interest in the hands of the financial institutions retain that character when returned or rebated to the appellants. In the ordinary sense of the word, money paid as interest does not retain that characteristic (as being interest) unless it too, when it is returned or rebated, is paid for the use of or forbearance or delay of use of money. To hold otherwise would lead to absurd results and would necessarily require that we determine when, after a given number of transactions, money loses its character as being interest. Our decision here follows logically from the case law, from the common ordinary understanding of the word interest, and from a common-sense interpretation of the SBTA.

## V. CONCLUSION

We hold that the rebate to the appellants, whether as a portion of the finance charge that

appellants have paid on their floor plan financing or whether part of the finance charge that the customer is paying the financial institution, is not interest income within the meaning of the Single Business Tax Act. Thus, the money returned to the appellants is business income that is properly includable in the tax base upon which the single business tax is calculated.

The decision of the Court of Appeals is affirmed.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICK-LEY, and BOYLE, JJ., concurred with RYAN, J.

CAVANAGH, J., took no part in the decision of these cases.