MUSKOVITZ v LUBBERS

Docket No. 111122. Submitted November 14, 1989, at Grand Rapids.
   Decided March 5, 1990. Leave to appeal applied for.
      The Art and Design Department of Grand Valley State University uses confidential peer reviews, written by faculty members
      of the department and submitted to the dean for consideration,
      in the annual salary review process. Once the dean has reviewed the faculty recommendations, he submits his own salary
      recommendation for each faculty member to the provost, who
      makes the final decisions on merit salary raises. In April, 1987,
      seven faculty members in the Art and Design Department
      submitted salary recommendations concerning Roslyn Muskovitz, a professor in the department who has been on the faculty
      since 1972. On the basis of the four recommendations he
      considered, the dean recommended a two percent salary increase for Muskovitz for the 1987-88 academic year. The two
      percent increase, which indicated a less than satisfactory performance, was approved by the provost. The dean then met
      with Muskovitz to explain the reasons for the two percent
      increase and to suggest ways to improve her performance.
      Muskovitz attempted to appeal the decision internally, in accordance with the university grievance procedure, and also filed a
      charge against the university with the Michigan Department of
      Civil Rights, alleging age discrimination. She requested copies
      of any and all documentation utilized by the university in
      arriving at its "less than satisfactory" salary decision, pursuant
      to the Employee Right to Know Act. The university provided
      Muskovitz with the verbatim comments of the four evaluations
      considered by the dean in a typed and reordered format, with
      the names deleted. Muskovitz filed suit against Arend D. Lubbers, President of Grand Valley State University, and the
      university in Muskegon Circuit Court requesting that copies of
      the actual peer reviews be provided without deleting the
      names. She also requested the written comments from the

REFERENCES
Am Jur 2d, Colleges and Universities § 11.
See the Index to Annotations under Colleges and Universities;
   Privileged and Confidential Matters.

department chairperson ballots, which, according to plaintiff, were also used by the dean in arriving at her salary. Plaintiff alleged that the comments and other relevant materials constituted personnel records as defined by the Employee Right to Know Act and were therefore accessible to her. Plaintiff claimed that her ability to appeal the unfair salary decision was greatly hindered because the comments were scrambled and that the reviews lost their meaning as a result of the manner in which the university reordered the material. The university claimed that it had complied with the act and that, if it had not complied, it was exempt for constitutional and other reasons. The court, James M. Graves, Jr., J., granted partial summary judgment in favor of defendants, finding that the identities of plaintiff's peer evaluators were protected from disclosure on three grounds: (1) the constitutional autonomy provided to Michigan universities in their educational sphere, (2) the "references" exemption to the Employee Right to Know Act, and (3) because of an academic privilege. Defendants were ordered to supply salary recommendations and narrative comments in a typewritten reordered format with the names of the evaluators removed. The court also ruled that the eight department chair ballots were completely exempt from disclosure under the "staff planning" exemption found in the act, but, because the university had previously agreed to provide the comments from the ballots, the university had to provide those comments. The court also found exempt as a staff planning document the letter from the dean to the provost recommending the two percent raise. Plaintiff appealed.

The Court of Appeals *held:*

1. The dean's letter to the provost setting forth salary increase recommendations is plainly exempted from disclosure by the act as a staff planning document since it sets forth recommended increases for every member of the department. The same is true of the chairperson ballots.

2. The confidential peer evaluations are exempt from disclosure as "employee references supplied to an employer" under the act to the extent that the form of disclosure of such evaluations would also reveal the identity of the person making the reference. The trial court's decision to prevent identification of the makers of the references while still allowing discovery of the substance of those references is the most reasonable construction possible of the statute.

Affirmed.

MARILYN KELLY, J., concurred in the result but wrote separately to state her disagreement with the majority's statement

that the university's peer review system is dependent on strict confidentiality and that meaningful participation of the faculty would be chilled without it.

1. MASTER AND SERVANT — SALARY INCREASES — PEER REVIEW EVALUATIONS — EMPLOYEE RIGHT TO KNOW ACT.

   A letter from a dean of a university to the university's provost setting forth salary increase recommendations for faculty members of the dean's department is exempted from disclosure under the Employee Right to Know Act as a "staff planning" document if it sets forth recommended increases for every member of that department, and the same is true for department chairperson ballots containing the names of the candidates and a section for comments where the ballots are also used to arrive at a salary determination (MCL 423.501[2][c][ii]; MSA 17.62[1][2][c][ii]).

2. MASTER AND SERVANT — PEER REVIEW EVALUATIONS — EMPLOYEE RIGHT TO KNOW ACT.

   Confidential peer evaluations are exempt from disclosure as "employee references supplied to an employer" under the Employee Right to Know Act to the extent that the form of disclosure of such evaluations would also reveal the identity of the person making the reference; where possible, discovery of the substance of the references should be allowed as long as identification of the makers of the references is prevented (MCL 423.501[2][c][i]; MSA 17.62[1][2][c][i]).

*Seymour L. Muskovitz,* for plaintiff.

*Varnum, Riddering, Schmidt & Howlett* (by *Thomas J. Barnes* and *Donald P. Lawless*), for defendants.

Before: CYNAR, P.J., and MARILYN KELLY and T. G. KAVANAGH,* JJ.

CYNAR, P.J. Plaintiff Rosalyn Muskovitz, a professor at defendant Grand Valley State University, appeals as of right from an August 1, 1988, final order of the circuit court granting summary disposition in favor of defendants on her complaint

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

brought pursuant to the Employee Right to Know Act, MCL 423.501 *et seq.*; MSA 17.62(1) *et seq.* Plaintiff seeks copies of confidential peer evaluations and a letter from the dean to the provost regarding faculty merit salary increases. We affirm.

Plaintiff is currently an associate professor at Grand Valley State University in the Art and Design Department, a division of Arts and Humanities, and has been on the faculty since 1972. As part of a reorganization of the university in September, 1982, it became part of the policy and practice of plaintiff's department within the university for confidential peer reviews to be written by faculty members and submitted to the dean for consideration in the annual salary review process. According to the policy, once the dean has reviewed the faculty recommendations, he then submits his own salary recommendation for each faculty member to the provost. The dean is not constrained regarding what weight, if any, is to be given the peer reviews. The final decision on merit salary raises is made by the provost.

In April, 1987, seven faculty members in the Department of Art and Design submitted salary recommendations concerning plaintiff. Three evaluations were not considered by the dean, two because they were untimely and one because it simply recommended an average increase for everyone in the department, without supporting comments.

On April 14, 1987, the dean made his salary recommendation to Provost Niemeyer for salary increases for all of the department personnel, including a two percent salary increase recommendation for plaintiff. Accepting the dean's recommendation, the provost approved a two percent increase for plaintiff for the 1987-88 academic

year, which indicated a less than satisfactory performance. The dean then met with plaintiff to explain the reasons for her two percent increase and to suggest ways for her to improve her performance.

Plaintiff attempted to appeal the decision internally, in accordance with the university grievance procedure. Plaintiff also filed a charge against the university with the Michigan Department of Civil Rights, alleging age discrimination. In order to pursue these appeals, plaintiff requested copies of any and all documentation utilized by the university in arriving at its "less than satisfactory" salary decision, pursuant to the Employee Right to Know Act. In response, the university provided plaintiff with the verbatim comments of the four evaluations considered by the dean in a typed and reordered format, with the names deleted. The remaining three evaluations were not furnished because the dean had not considered them in his deliberations.

Plaintiff then instituted an action in circuit court under the act, requesting that copies of the actual peer reviews be provided without deletion of the names. She also requested the written comments from the department chairperson ballots, which, according to plaintiff, were also used by the dean in arriving at her salary. The ballots were distributed in April, 1987, for the faculty in the Department of Art and Design to choose a chairperson for the 1987-88 academic year. The ballots contained the names of the candidates as well as a section for comments. Plaintiff alleged that the comments from the remainder of the confidential peer reviews and the chairperson ballots and other relevant materials constituted "personnel records" as defined by the act and were therefore accessible to her. Plaintiff also claimed that, because the

comments on the reviews were scrambled, the reviews lost their meaning and her ability to appeal the unfair salary decision was greatly hindered. The university responded by claiming that it had complied with the act and that, if it had not complied, it was exempt for constitutional and other reasons.

It was agreed between the parties that there were no genuine issues of material fact and that the case could be decided by motions for summary disposition. Accordingly, the parties submitted a stipulation of facts and respective motions for summary disposition. Plaintiff moved for summary disposition pursuant to MCR 2.116(A) and defendants moved for summary disposition pursuant to MCR 2.1116(C)(8) and (10).

In an opinion dated May 12, 1988, the court partially granted defendants' motion for summary disposition, ruling that the identity of plaintiff's peer evaluators was protected from disclosure on three grounds: (1) the constitutional autonomy provided to Michigan universities in their educational sphere, (2) the "references" exemption to the act, and (3) because of an academic privilege. The court ordered that plaintiff be supplied with the comments from all 1987 peer salary recommendations and the 1988 salary recommendations that had been conducted by that time, but disclosure was to be made in such a way as to assure that the identities of plaintiff's peer evaluators remained absolutely unknown to plaintiff. The court further ordered that unsigned comments on the election ballots and the dean's letter of recommendation to the provost be provided, if the dean's letter dealt only with plaintiff.

The university then filed a motion for clarification or reconsideration to receive further direction concerning the format of disclosure and the status

of department chair ballots that plaintiff sought to obtain as well. Pursuant to this motion, the court reviewed, in camera, the actual peer salary recommendations along with copies of the department chair ballots and the April 14 letter from the dean to the provost.

In a supplemental opinion, on June 28, 1988, the court determined that plaintiff could readily identify her peer evaluators if she was provided a verbatim, unsigned transcript of these comments. The court found that the content and style of the actual comments, if disclosed in sequence, would reveal the authors' identities due to the small size of plaintiff's department. Defendants were ordered to supply salary recommendations and narrative comments in a typewritten reordered format with the names of the evaluators removed. Further, the court ruled that the eight department chair ballots were completely exempt from disclosure under the "staff planning" exemption found in the act. MCL 423.501(2)(c)(ii); MSA 17.62(1)(2)(c)(ii). However, because the university had previously agreed to provide the comments from the chairperson ballots, the court ruled that the university had to comply with its previous representation. Finally, the court found the dean's letter exempt, as a "staff planning" document. The court issued its "final order" in this matter on August 1, 1988.

Plaintiff argues here on appeal that the circuit court erred in denying her access to the confidential peer reviews and ballots in their original format and to the April 14 letter from the dean to the provost. We disagree.

MCL 423.501(2)(c)(i); MSA 17.62(1)(2)(c)(i) provides:

(2) As used in this act . . . .
(c) "Personnel record" means a record kept by

the employer that identifies the employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action. A personnel record shall include a record in the possession of a person, corporation, partnership, or other association who has a contractual agreement with the employer to keep or supply a personnel record as provided in this subdivision. *A personnel record shall not include:*

(i) *Employee references* supplied to an employer if the identity of the person making the reference would be disclosed. [Emphasis added.]

Subsection (2)(c)(ii) also excludes from disclosure:

(ii) Materials relating to the employer's staff planning with respect to more than 1 employee, including salary increases, management bonus plans, promotions, and job assignments.

As often repeated:

A fundamental rule of statutory construction is that the court is obligated to ascertain and give effect to the intention of the Legislature, and it is equally axiomatic that words are to be given their ordinary, normally accepted meaning. [*Town & Country Dodge, Inc v Dep't of Treasury*, 420 Mich 226, 240; 362 NW2d 618 (1984), reh den 421 Mich 1202 (1985).]

Furthermore, where the meaning of a statute is plain and unambiguous, judicial construction or interpretation is precluded. However, if judicial interpretation is required to determine legislative intent, statutory language should be given a reasonable construction considering the statute's purpose and the object sought to be accomplished. Absurd or unreasonable consequences must be

avoided. *Joy Management Co v Detroit,* 176 Mich
App 722, 730-731; 440 NW2d 654 (1989); *Bar Processing Corp v State Tax Comm,* 171 Mich App
472, 477; 430 NW2d 753 (1988).

Under subsection (2)(c)(ii), the April 14, 1988,
letter from the dean to the provost setting forth
salary increase recommendations is plainly exempted from disclosure as a "staff planning" document as it sets forth recommended increases for
every member of plaintiff's department. The same
can be said of the chairperson ballots as they also
refer to faculty members other than plaintiff.

Further, we hold that the confidential peer evaluations are exempt from disclosure as "[e]mployee
references supplied to an employer," under subsection (2)(c)(i), to the extent that the form of disclosure of such evaluations would also reveal "the
identity of the person making the reference."

In reaching this conclusion, we are persuaded by
the California Court of Appeals decision in *Bd of
Trustees of Leland Stanford Junior Univ v Superior Court of Santa Clara Co,* 119 Cal App 3d 516;
174 Cal Rptr 160 (1981). In that case, the plaintiff
professor sought to obtain the contents of his
personnel, tenure and promotion files which included confidential peer evaluations. However, the
court held that such evaluations fell within the
"letters of reference" exemption to § 1198.5 of the
California Labor Code, which provided:

> Every employer shall . . . upon the request of
> an employee, permit that employee to inspect such
> personnel files which are used or have been used
> to determine that employee's qualifications for
> employment, promotion, additional compensation,
> or termination or other disciplinary action. . . .
> *This section . . . shall not apply to letters of
> reference.* [Emphasis added.]

The court construed the exemption as applicable to *all* confidential communications concerning "qualifications for employment, promotion, additional compensation, or termination or other disciplinary action," whether before or after an employee's initial hiring by an employer. *Leland Stanford,* 119 Cal App 3d 528-532.

Nevertheless, the *Leland Stanford* court found that the manifest purpose of the Labor Code section was only to protect the identity and privacy of those persons who supplied the confidential information, not the "contents" of the letters of reference. Therefore, given that California state courts "should impose partial limitations rather than outright denial of discovery," the court concluded that a "reasonable" interpretation of the section at issue would allow disclosure of the substance of the evaluations where "appropriate deletions of identification of the sources" is provided for by the trial court. 119 Cal App 3d 532-533.

Such an interpretation is all the more appropriate here where the language of the statutory section itself indicates that the sole concern of the Legislature is to prevent disclosure of "the *identity* of the person making the reference." [Emphasis added.] MCL 423.501(2)(c)(i); MSA 17.62(1)(2)(c)(i). Balancing Michigan's "liberal discovery" policy, see, e.g., *Fitzpatrick v Secretary of State,* 176 Mich App 615, 617; 440 NW2d 45 (1989), against the university's constitutional autonomy in the operation of its education sphere, Const 1963, art 8, § 5; *Regents of the Univ of Michigan v Employment Relations Comm,* 389 Mich 96, 104; 204 NW2d 218 (1973), we find that the trial court's decision to prevent identification of the makers of the references, yet still allow discovery of the substance of those references, is the most "reasonable" construction possible of subsection (2)(c)(i). In this

way, plaintiff receives as much information as possible concerning the basis for the university's salary decision without violating the legislative intent manifest in subsection (2)(c)(i) to protect the privacy of those making the evaluation. This interpretation of the statute also protects the integrity and effectiveness of the university's peer evaluation system. Such a system is necessarily dependent on the maintenance of strict confidentiality without which meaningful participation of the faculty would be chilled.

In reaching our decision in this matter, we have also considered the very recent opinion of the United States Supreme Court in *Univ of Pennsylvania v Equal Employment Opportunity Comm,* — US —; 110 S Ct 557; 107 L Ed 2d 571 (1990). In that case, the Supreme Court held that a university does not enjoy a special privilege, grounded in either policy considerations or the first amendment right of academic freedom, which would require the EEOC to demonstrate a particularized necessity of access, beyond a showing of mere relevance, before confidential peer review materials pertinent to charges of discrimination in tenure decisions are disclosed to the EEOC. However, the Court's decision was premised on the EEOC's overriding and broad right of access to any evidence "relevant" to a discrimination charge under investigation granted to it under Title VII of the Civil Rights Act of 1964, 42 USC 2000e-8(a). In this case, we are concerned only with the scope of plaintiff's right of discovery pursuant to the Employee Right to Know Act. Within the context of that statute, plaintiff's underlying reasons for wanting copies of the contents of her employment file are immaterial.

Affirmed.

T. G. KAVANAGH, J., concurred.

MARILYN KELLY, J. *(concurring)*. I concur in the result reached in the majority opinion. I must disagree, however, that the university's peer review system is dependent on strict confidentiality and that meaningful participation of the faculty would be chilled without it. I subscribe to the rationale of *Univ of Pennsylvania v Equal Employment Opportunity Comm,* — US —; 110 S Ct 577, 588; 107 L Ed 2d 571, 589 (1990):

> [C]onfidentiality is not the norm in all peer review systems. . . . [W]e are not so ready as petitioner seems to be to assume the worst about those in the academic community. Although it is possible that some evaluators may become less candid as the possibility of disclosure increases, others may simply ground their evaluations in specific examples and illustrations in order to deflect potential claims of bias or unfairness. Not all academics will hesitate to stand up and be counted when they evaluate their peers.