KIHROTRIS v FORD MOTOR COMPANY

Docket Nos. 112562, 112581. Submitted March 7, 1990, at Lansing. Decided April 16, 1990. Leave to appeal applied for.

Plaintiff, Joseph Kihrotris, sustained injuries while employed by defendant Ford Motor Company and filed a petition seeking workers' compensation benefits. A hearing referee found plaintiff to have an aggravated, disabling injury and that he was incurably insane due to his employment. Ford was thus determined to be responsible for the payment of certain benefits and the Second Injury Fund was found responsible for certain differential benefits. Ford and the fund both commenced paying plaintiff seventy percent of the awarded benefits while they appealed to the Workers' Compensation Appeal Board. The WCAB affirmed the finding that plaintiff had an aggravated, disabling injury but reversed the finding that plaintiff was incurably insane due to his employment. The fund, which had already paid $6,114.38 to plaintiff, then ceased payment of the seventy percent benefits, since it owed nothing to plaintiff. Ford claimed credit against the $6,114.38 for the thirty percent it had not paid to plaintiff during the appeal period and which it now owed plaintiff. Plaintiff protested and, following a hearing, the referee ordered Ford to pay benefits for certain periods and gave Ford credit for the $6,114.38 paid by the fund. The referee did not resolve the fund's request for reimbursement from Ford of the $6,114.38. The WCAB affirmed in part but ruled that Ford could not have credit for the benefits paid by the fund and that the fund may not be reimbursed for its payments to plaintiff. The Court of Appeals granted applications for leave to appeal by Ford and the fund and consolidated the appeals.

The Court of Appeals held:

1. The WCAB erred in ruling that the $6,114.38 paid to plaintiff by the Second Injury Fund was not available to Ford as a credit toward its liability under the final determination of this appeal and by holding that Ford did not have to reimburse the fund for the benefits the fund paid the plaintiff.

2. The Workers' Disability Compensation Act does not pre-

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 364, 365, 660.
See the Index to Annotations under Worker's Compensation.

clude reimbursement to one insurer from another or to the fund from another insurer.

3. The Second Injury Fund falls within the definition of "carrier" as that term is used in the Workers' Disability Compensation Act.

Reversed.

1. Workers' Compensation — Credit for Benefits Paid — Second Injury Fund.

An employer is entitled, where a referee's award is affirmed on appeal by the Workers' Compensation Appeal Board, to credit for any compensation already paid to the employee; the amount of such credit is not limited to compensation previously paid by the employer, but may include compensation paid to the employee by the Second Injury Fund prior to the WCAB's determination that the employee was not entitled to the compensation the fund paid him (MCL 418.862; MSA 17.237[862]).

2. Workers' Compensation — Reduction in Awards — Reimbursement — Second Injury Fund.

The Workers' Disability Compensation Act does not preclude reimbursement to one insurer from another or to the Second Injury Fund from another insurer where an award of compensation is reduced or rescinded by a final determination; therefore, where the SIF is originally determined to be liable for the payment of compensation and is subsequently determined to not be liable, or not to the same extent as originally determined, the SIF shall be reimbursed by the liable party (MCL 418.852[2], 418.862; MSA 17.237[852][2], 17.237[862]).

*Goodman, Eden, Millender & Bedrosian* (by *Morton A. Eden*), and *Daryl Royal,* of Counsel, for plaintiff.

*Patrick J. Welch,* and *Conklin, Benham, Ducey, Ottaway, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), of Counsel, for Ford Motor Company.

*Frank J. Kelley,* Attorney General, and *Morrison Zack,* Assistant Attorney General, for the Second Injury Fund.

Before: Griffin, P.J., and Wahls and Brennan, JJ.

GRIFFIN, P.J. In this consolidated appeal, defendants Ford Motor Company and Second Injury Fund (SIF) appeal by leave granted from a decision of the Workers' Compensation Appeal Board which held that Ford was not entitled to a credit against the amount it was found to owe plaintiff based on "seventy percent benefits" paid to plaintiff by the SIF while the case was on appeal before the WCAB.[1] The opinion further held that the SIF was not entitled to reimbursement from Ford for the seventy percent benefits it paid to plaintiff, despite the fact that plaintiff's injuries did not warrant payment of differential benefits by the SIF. We reverse.

I

Plaintiff sustained injuries, including a fractured left wrist, when he fell at work on July 27, 1971. Plaintiff apparently continued to work until August 16, 1974, his last day of work. Plaintiff filed a petition for benefits March 11, 1976, claiming disability as a result of injuries sustained during the fall. He filed an amended petition on March 17, 1977, claiming both general disability from injuries sustained in the fall and total and permanent disability based on incurable insanity related to his work.

In a decision mailed April 27, 1978, a hearing referee awarded plaintiff continuing benefits based upon his 1971 injury and a disabling aggravation of the injury as of August 16, 1974. The referee also found plaintiff incurably insane, thus making plaintiff totally and permanently disabled and making the SIF responsible for differential benefits pursuant to MCL 418.521(2); MSA 17.237(521)(2).

Plaintiff's employer, Ford, had been paying bene-

---

[1] We decline to address the cross appeal for the reason that the issue raised was neither addressed nor decided below.

fits to plaintiff at the 1971 rate even before the hearing referee's decision. After the referee's decision, both Ford and the SIF, pursuant to MCL 418.862; MSA 17.237(862), commenced paying plaintiff seventy percent of the awarded benefits while they appealed the case to the WCAB.

The WCAB on February 25, 1981, affirmed the portion of the referee's decision finding plaintiff to have an aggravated, disabling injury as of his last day worked, August 16, 1974. However, the WCAB reversed the referee's decision that plaintiff was incurably insane due to his employment. Thus, the SIF was in the position of owing nothing to plaintiff and Ford was required to pay disability benefits based on the 1974 rate. This decision of the WCAB was not appealed and is therefore final.

The SIF then ceased payment of seventy percent benefits to plaintiff, but had already paid $6,114.38 to plaintiff. Ford claimed credit against this amount for the thirty percent it had not paid to plaintiff during the appeal period, and which it now owed to plaintiff. Plaintiff protested and filed a petition for penalties, which resulted in a Rule 5 hearing (1979 AC, R 408.35) before the same referee who had heard the case.

The referee ruled on October 30, 1981, that Ford had to pay benefits for the period August 17, 1974, to April 27, 1978, and from February 25, 1981, until further order. The referee gave credit to Ford for the amount of seventy percent benefits paid by the SIF, thereby relieving Ford of any obligation for plaintiff's benefits for the period April 27, 1978, to February 25, 1981. The referee did not resolve the SIF's request for reimbursement from Ford of the amount that the SIF had paid to plaintiff in seventy percent benefits.

The WCAB, in an order dated September 22, 1988, affirmed in part and reversed in part the

referee's decision. The WCAB affirmed the referee's decision that Ford was responsible for paying benefits from August 17, 1974, until further order, but ruled that Ford could not have a "credit" for the differential benefits paid by the SIF under § 862, and ruled, further, that the SIF may not be reimbursed for any such payments it made to the plaintiff.

Ford and the SIF filed separate applications for leave to appeal to this Court which were consolidated and granted.

## II

On appeal, Ford and the SIF argue that the WCAB erred by ruling that the interim appeal payments, seventy percent benefits, paid to plaintiff by the SIF during the appeal were not available to Ford as a credit toward its liability under the final determination of this appeal and by holding that Ford did not have to reimburse the SIF for the benefits it paid to plaintiff. We agree.

The issue before us is a matter of first impression in Michigan. Under MCL 418.862; MSA 17.237(862):

[1] A claim for review filed pursuant to sections 859, 859a, 860, 861, or 864(11) shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the award of the hearing referee, worker's compensation magistrate, or arbitrator, as applicable. [2] Payment shall commence as of the date of the hearing referee's, worker's compensation magistrate's, or arbitrator's award, as applicable, and shall continue until final determination of the appeal or for a shorter period if specified in the award. [3] Benefits accruing prior to the award shall be withheld until final determination of the appeal. [4] If the weekly benefit is reduced or rescinded by a

final determination, the carrier shall be entitled to reimbursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined. [5] Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in chapter 5. [6] If the award is affirmed by a final determination, the carrier shall pay all compensation which has become due under the provisions of the award, less any compensation already paid. [7] Interest shall not be paid on amounts paid pending final determination. [8] Payments made to the claimant during the appeal period shall be considered as accrued compensation for purposes of determining attorneys' fees under the rules of the bureau. [The sentences have been numbered in the above quote to facilitate discussion below.]

Under sentence six, above, where the award is affirmed, the carrier is entitled to credit for *any* compensation already paid. As noted by our Supreme Court in *Hiltz v Phil's Quality Market,* 417 Mich 335; 337 NW2d 237 (1983), any seventy percent benefits paid to the employee during the pendency of an appeal of a referee's award are considered to be "compensation" for purposes of the above statute. *Id.,* pp 348-349. If the referee's award is affirmed, the employer is entitled under the statute to credit for any compensation already paid. *Id.,* p 345.

The instant situation is factually distinct from the one in *Hiltz* in that here the employer, Ford, is seeking credit for compensation paid to the employee by another source, the SIF. However, we hold that, under these circumstances, allowance of such credit in favor of the employer, Ford, is consistent with the plain language and spirit of the act.

As noted *supra,* the sixth sentence of § 862 provides that the employer is entitled to credit for

"*any* compensation already paid" to the employee. The statute does not limit the credit to compensation previously paid by the same source seeking the credit. To so interpret the statute would be to add language not provided by the Legislature. Giving the words of the statute their plain meaning as we are required to do, *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 240; 362 NW2d 618 (1984), reh den 421 Mich 1202 (1985), we conclude that Ford is entitled to credit against its obligations to plaintiff in the amount of the seventy percent benefits paid to plaintiff by the SIF.

Moreover, we note that to deny Ford the credit it seeks would allow plaintiff to reap a windfall from the SIF. The purpose of the act is to render the injured employee whole; to allow double recovery to the employee is repugnant to this purpose. *Stanley v Hinchliffe & Kenner,* 395 Mich 645, 657; 238 NW2d 13 (1976), reh den 396 Mich 976 (1976). Plaintiff, the employee, cannot be required to reimburse the SIF, even though the WCAB determined that he was not entitled to the compensation the SIF paid him. *McAvoy v H B Sherman Co,* 401 Mich 419, 449-450; 258 NW2d 414 (1977). Thus, the only possible result in the instant case consistent with the spirit and letter of the Workers' Disability Compensation Act is to allow Ford credit for the seventy percent benefits paid in error by the SIF.

III

We next address whether the SIF is entitled to reimbursement from Ford.

Sentences four and five of § 862 provide that, if an award of compensation is reduced or rescinded by a final determination, the carrier is entitled to

reimbursement from the SIF for seventy percent payments made while a case is pending on appeal. As pointed out by the WCAB below, this statute was written in terms of reimbursement *from* the SIF and *to* a carrier. In the instant case, it is the SIF that seeks reimbursement from Ford (the equivalent of a "carrier"). This gives rise to plaintiff's argument that there is no authority under the act allowing reimbursement to the SIF.

However, we conclude that the statute does not preclude reimbursement to one insurer from another or to the SIF from another insurer. In *Sosnowski v Dandy Hamburger,* 384 Mich 221; 180 NW2d 761 (1970), the carrier which was ultimately found responsible to the employee was required to reimburse another carrier which had paid interim benefits. This Court reached the same result in *Stewart v Saginaw Osteopathic Hospital,* 100 Mich App 502, 510; 298 NW2d 911 (1980), ruling:

> The fact that a transfer of funds from one carrier to another is not specifically authorized by statute is not an impediment to such payment.

Thus, reimbursement from Ford to the SIF is proper in the instant case if the SIF is deemed to be a "carrier" under the act.

MCL 418.601; MSA 17.237(601) states:

> Whenever used in this act:
> (a) "Insurer" means an organization which transacts the business of workmen's compensation insurance within this state.
> (b) "Self-insurer" means an employer authorized to carry its own risk.
> (c) "Carrier" means a self-insurer, an insurer and the accident fund.

The Second Injury Fund is a state insurance

fund created by the Legislature to insure carriers and self-insured employers against certain losses occurring due to workers' compensation claims. *McAvoy, supra,* p 450. We conclude that, as such, the SIF falls within the definition of "carrier" as used in the act.

The sixth sentence of § 862 provides that a "carrier" shall pay all compensation which has become due while a case was on appeal, less any compensation already paid. For this sentence to have any sense in cases involving the SIF, the term "carrier" must be construed to include the SIF.

In *Cliffs Forest Products Co v Al Disdero Lumber Co,* 144 Mich App 215, 222; 375 NW2d 397 (1985), this Court summarized the standards to be applied to the process of judicial construction of statutes:

> The cardinal rule of statutory construction is to ascertain and effectuate the Legislature's intent. *Lansing v Lansing Twp,* 356 Mich 641; 97 NW2d 804 (1959). Statutory language should be construed reasonably and the purpose of the statute and its objective should be kept in mind. *Schoolcraft County Bd of Comm'rs v Schoolcraft Memorial Hospital Bd of Trustees,* 68 Mich App 654; 243 NW2d 708 (1976), lv den 397 Mich 838 (1976). A provision should be read in its entirety and in connection with the rest of the statute. Whenever possible the meaning of one section of a statute should be read in harmony with the rest of the statute. Statutes are construed so that their words will have a reasonable meaning. *Wyandotte Savings Bank v State Banking Comm'r,* 347 Mich 33; 78 NW2d 612 (1956).

As noted *supra,* to exclude the SIF from the act's definition of "carrier" would cause absurd results with regard to the SIF's responsibilities under § 862.

Moreover, the Legislature has expressly addressed this issue by enactment of 1985 PA 103, effective July 30, 1985, MCL 418.852(2); MSA 17.237(852)(2), which provides:

> If a carrier or fund originally determined to be liable pursuant to subsection (1) is subsequently determined to not be liable or not to the same extent as originally determined, that carrier or fund shall be reimbursed by the liable party or parties with interest at 12% per annum.

We view this amendment as a clarification of the law rather than a change, since it facilitates a consistent definition of the SIF as a "carrier" throughout the act. Accordingly, we hold that the WCAB erred by ruling that the SIF was not entitled to reimbursement from Ford for benefits erroneously paid to plaintiff.

Reversed.