# Court of Appeals, State of Michigan

## ORDER

LaBelle Management, Inc. v Michigan Department of Treasury

Docket No. 324062

LC No. 13-000095-MT

Henry William Saad
Presiding Judge

Kurtis T. Wilder

Christopher M. Murray
Judges

        The Court orders that the 03/31/2016 opinion is hereby AMENDED. The opinion contained the following clerical error: the word "issue" was omitted after the word "dispositive" in the first sentence of the last paragraph on page 3. The sentence should now read:

> There is no dispute that the dispositive issue here is what is meant by the phrase "owns or controls, directly or indirectly."

        In all other respects, the 03/31/2016 opinion remains unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

APR 0 5 2016
_____
Date

_____
Chief Clerk

LABELLE MANAGEMENT, INC.,

        Plaintiff-Appellant,

v

MICHIGAN DEPARTMENT OF TREASURY,

        Defendant-Appellee.

FOR PUBLICATION
March 31, 2016
9:05 a.m.

No. 324062
Court of Claims
LC No. 13-000095-MT

Before: SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals from the trial court's order that denied its motion for summary disposition and granted defendant's motion for summary disposition. At issue is the interpretation of MCL 208.1117(6), which defines the term "unitary business group."[1] Defendant determined that plaintiff is a member of a unitary business group and taxed plaintiff accordingly for two tax periods. Plaintiff filed suit and alleged that defendant improperly broadened its interpretation of "unitary business group" beyond the scope intended by the Legislature. The trial court agreed with defendant's interpretation. We however disagree, and for the reasons provided below, we reverse and remand.

## I. BASIC FACTS

The underlying facts involve three different entities during the relevant tax periods: plaintiff, The Pixie, Inc., and LaBelle Limited Partnership.

Plaintiff is a Michigan corporation, which was primarily owned by brothers Barton and Douglas LaBelle. At no time during the tax periods did either brother own more than 50% of plaintiff's common stock.

The Pixie, Inc., (Pixie) is a Michigan corporation. Originally, plaintiff was a subsidiary of Pixie, but Pixie sold all of its interest in plaintiff to the LaBelle brothers on January 1, 2008,

---

[1] Although this statute has been amended several times since the tax periods here at issue, most recently by 2011 PA 209, the definition of "unitary business group" has not been changed.

-1-

thus triggering the tax periods here at issue. Again, during the relevant tax periods, each of the LaBelle brothers never owned more than 50% of Pixie's common stock.

LaBelle Limited Partnership is a Michigan limited partnership. In forming the partnership, each of the LaBelle brothers contributed $50—$1 for a 1% general partnership and $49 for a 49% limited partnership. The partnership was later amended to add the brothers' children as limited partners, thereby reducing the brothers' share of the limited partnership.

After being sold by Pixie, plaintiff reported its business tax as a separate company. During 2011 and 2012, defendant conducted an audit of plaintiff's tax returns for the two tax periods at issue. As a result of the audit, defendant determined that plaintiff, Pixie, and LaBelle Limited Partnership should be treated, together, as a "unitary business group" based on MCL 208.1117(6), which defines that term, and the interpretation of that statute provided by defendant's Revenue Admin Bull 2010-1, Unitary Business Group Control Group Test. Applying the test outlined in the bulletin, defendant concluded that plaintiff indirectly owns 100% of Pixie and LaBelle Limited Partnership and that Pixie indirectly owns 100% of plaintiff and 90% of LaBelle Limited Partnership. Defendant calculated the sum owed under this treatment ($228,668), applied each entity's previous tax payments to the outstanding amount, and sent plaintiff a final bill for the remainder in the amount of $11,856.29. Plaintiff paid the bill under protest and commenced this lawsuit in the Court of Claims.

The parties brought cross-motions for summary disposition under MCR 2.116(C)(10). The key issue before the trial court and this Court is whether defendant correctly concluded that the three entities involved (plaintiff, LaBelle Limited Partnership, and The Pixie, Inc.) constituted a "unitary business group" as defined in MCL 208.1117(6), which requires one member of the group to directly or *indirectly* own or control more than 50% of the ownership interests of the other members. Because the parties agreed that no entity directly owned more than 50% ownership interest of any of the others, the trial court had to determine whether there was sufficient *indirect* ownership or control to satisfy the statutory definition.

While recognizing that it was permissible to refer to the federal income tax code for definitions in some circumstances, the trial court looked to 26 USC 957. The court explained that "[t]he provisions most contextually analogous to a state's determination of indirect ownership or control for combined return purposes are the IRC's international taxation provisions that require a U.S. shareholder to include in its return the income of a 'controlled foreign corporation.'" Like MCL 208.1117(6), the analogous federal provision 26 USC 957 refers to "more than 50 percent" ownership. While citing Revenue Admin Bull 2010-1, the trial court noted that 26 USC 957 "applies the same attribution rules under IRC § 318 as are applied by the Department to determine ownership interest under § 117 of the MBT." The court opined that its interpretation "is also consistent with the legislative purpose" of reducing tax avoidance. Accordingly, the court denied plaintiff's motion and granted defendant's motion.

## II. STANDARDS OF REVIEW

Appellate review of the grant or denial of a summary-disposition motion is de novo, and the court views the evidence in the light most favorable to the party opposing the motion. Summary disposition is appropriate under MCR

-2-

2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted).]

Further, "[i]ssues of statutory construction present questions of law that are reviewed de novo." *Atchison v Atchison*, 256 Mich App 531, 534-535; 664 NW2d 249 (2003).

## III. ANALYSIS

Plaintiff argues, and we agree, that the trial court erred in using the federal income tax definition of "constructive" ownership when defining Michigan's "indirect" ownership requirement in MCL 208.1117(6).

### A.

"If the language of [a] statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n*, 484 Mich 1, 13; 795 NW2d 101 (2009) (quotation marks and citations omitted). Tax laws generally will not be extended in scope by implication or forced construction, and when there is doubt, tax laws are to be construed against the government. *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 477-478; 518 NW2d 808 (1994). " '[A]gencies cannot exercise legislative power by creating law or changing the laws enacted by the Legislature.' " *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 46; 869 NW2d 810 (2015), quoting *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 98, 754 NW2d 259 (2008).

The statute at issue here is MCL 208.1117(6), which defines "unitary business group" as follows:

"Unitary business group" means a group of United States persons, other than a foreign operating entity, 1 of which owns or controls, directly or indirectly, more than 50% of the ownership interest with voting rights or ownership interests that confer comparable rights to voting rights of the other United States persons, and that has business activities or operations which result in a flow of value between or among persons included in the unitary business group or has business activities or operations that are integrated with, are dependent upon, or contribute to each other. For purposes of this subsection, flow of value is determined by reviewing the totality of facts and circumstances of business activities and operations.

There is no dispute that the dispositive here is what is meant by the phrase "owns or controls, directly or indirectly." There additionally is no dispute that there is insufficient direct ownership to give rise to a unitary business group. Thus, as the trial court correctly observed, the issue is how to define "owns or controls . . . indirectly."

-3-

The Michigan Business Tax Act, MCL 208.1101 *et seq.*, does not define indirect ownership or control. But it does provide that "[a] term used in this act and not defined differently shall have the same meaning as when used *in comparable context* in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required." MCL 208.1103 (emphasis added). In *Town & Country Dodge, Inc v Dep't of Treasury*, 420 Mich 226, 240; 362 NW2d 618 (1984), the Michigan Supreme Court emphasized that when employing federal tax laws to define a statutorily undefined term, the federal context must be comparable to the Michigan context. Because the Court in *Town & Country* did not find a comparable context, it concluded that "the Legislature intended that the word was to be construed according to its ordinary and primarily understood meaning." *Id*. Similarly, in *Consumers Power Co v Dep't of Treasury*, 235 Mich App 380, 385; 597 NW2d 274 (1999), this Court turned to a legal dictionary after it found that the federal tax laws lacked a standard definition of "net income," which was undefined by the Michigan tax laws.

As the trial court noted, "No [federal income tax] provision is directly comparable to § 117 of the MBT." Thus, in the absence of a comparable context, the trial court should have resorted to normal rules of statutory construction to determine the meaning of the undefined term. See *Town & Country*, 420 Mich at 240. Instead, the court sought out "contextually analogous" provisions, and of the numerous places where indirect ownership or control is considered, the court found most appropriate the provisions relating to international taxation that define a "controlled foreign corporation," specifically 26 USC 957 and 26 USC 958.

26 USC 957 looks at whether "more than 50 percent of" a corporation's voting stock or total value of stock "is *owned* (within the meaning of section 958(a)), or is *considered as owned* by applying the rules of ownership of section 958(b)." 26 USC 957(a) (emphasis added). 26 USC 958 provides in its entirety (indented differently for clarity):

**§ 958. Rules for determining stock ownership.**

**(a) Direct and indirect ownership.**

**(1) General rule.** For purposes of this subpart (other than section 960(a)(1)), stock owned means—

(A) stock owned directly, and

(B) stock owned with the application of paragraph (2).

**(2) Stock ownership through foreign entities.** For purposes of subparagraph (B) of paragraph (1), stock owned, directly or indirectly, by or for a foreign corporation, foreign partnership, or foreign trust or foreign estate (within the meaning of section 7701(a)(31)) shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries. Stock considered to be owned by a person by reason of the application of the preceding sentence shall, for purposes of applying such sentence, be treated as actually owned by such person.

-4-

**(3) Special rule for mutual insurance companies.** For purposes of applying paragraph (1) in the case of a foreign mutual insurance company, the term "stock" shall include any certificate entitling the holder to voting power in the corporation.

**(b) Constructive ownership.** For purposes of sections 951(b), 954(d)(3), 956(c)(2), and 957, section 318(a) (relating to constructive ownership of stock) shall apply to the extent that the effect is to treat any United States person as a United States shareholder within the meaning of section 951(b), to treat a person as a related person within the meaning of section 954(d)(3), to treat the stock of a domestic corporation as owned by a United States shareholder of the controlled foreign corporation for purposes of section 956(c)(2), or to treat a foreign corporation as a controlled foreign corporation under section 957, except that—

(1) In applying paragraph (1)(A) of section 318(a), stock owned by a nonresident alien individual (other than a foreign trust or foreign estate) shall not be considered as owned by a citizen or by a resident alien individual.

(2) In applying subparagraphs (A), (B), and (C) of section 318(a)(2), if a partnership, estate, trust, or corporation owns, directly or indirectly, more than 50 percent of the total combined voting power of all classes of stock entitled to vote of a corporation, it shall be considered as owning all the stock entitled to vote.

(3) In applying subparagraph (C) of section 318(a)(2), the phrase "10 percent" shall be substituted for the phrase "50 percent" used in subparagraph (C).

(4) Subparagraph (A), (B), and (C) of section 318(a)(3) shall not be applied so as to consider a United States person as owning stock which is owned by a person who is not a United States person.

Paragraphs (1) and (4) shall not apply for purposes of section 956(c)(2) to treat stock of a domestic corporation as not owned by a United States shareholder.

Clearly, the statute identifies three distinct kinds of ownership: direct, indirect, and constructive ownership, the last of which is not true ownership but "considered as owned," i.e., a legal fiction. Assuming 26 USC 958 to be a "comparable context," the correct section to apply would have been § 958(a), which uses the same "direct and indirect ownership" terminology used by MCL 208.1117(6), not § 958(b). Further, the only term actually defined in 26 USC 958 is "stock owned"; the remainder explains application and treatment without providing definitions. Notably, both §§ 958(a) and 958(b) apply to situations where stock is owned "directly or indirectly"; this indicates that while these rules of actual and constructive ownership *apply* to indirectly owned stock, the rules do not *define* that term.

Moreover, the federal tax statutes and regulations are replete with examples that illustrate the proposition that indirect ownership and constructive ownership are two different concepts. We recognize that there are federal regulations directing that constructive ownership rules— including 26 USC 318(a)—are to be applied to determine indirect ownership. See, e.g., 26 CFR 1.382-2T(f)(15) (2015) and 26 CFR 1.704-1(b)(2)(*iii*)(d)(6) (2015). There are also regulations

directing that constructive ownership rules are used to determine whether "stock is owned (directly or indirectly under the provisions of section 544)." 26 CFR 1.856-1(d)(5) (2015); see also 26 CFR 1.861-8T(c)(2)(*ii*) (2015).

However, there are regulations that more clearly delineate between indirect ownership and constructive ownership. 26 CFR 1.871-14 (g)(2)(*iii*)(A) (2015) expressly refers to "stock directly or indirectly owned *and* stock owned by reason of the attribution rules of section 318(a)." (Emphasis added.) Yet another regulation instructs that "the determination of a person's indirect ownership is made on the basis of all the facts and circumstances in each case; the substance rather than the form is controlling . . . ." 26 CFR 1.1291-1T(a)(8)(*i*) (2015). And in certain multi-tiered corporate contexts,[2] a shareholder at the top of a chain of tiered corporations "indirectly owns" stock in lower-tiered corporations "through such chain." 26 CFR 1.902-1(a)(4)(*ii*) (2015).

Indeed, the constructive-ownership statute used by the trial court as the "definition" of indirect ownership includes language which indicates that, rather than defining the term at issue, it instead applies to "stock owned, directly or indirectly"—a phrase that appears in no less than nine of the statute's subdivisions. 26 USC 318(a). In the whole of Title 26 of the United States Code and Code of Federal Regulations, our review uncovers only one instance of an actual definition of "owned indirectly," which appears in the context of consolidated returns: "Indirectly, when used in reference to ownership, means ownership through a partnership, a disregarded entity, or a grantor trust, regardless of whether the partnership, disregarded entity, or grantor trust is a U.S. person." 26 CFR 1.1503(d)-1(b)(19) (2015).

All of this serves to illustrate several points: federal statutes and regulations are careful never to say that indirect ownership *means* constructive ownership and, in fact, at times expressly distinguish between the two; rules of constructive ownership are not broadly applied any time indirect ownership is involved, but only when the statute or regulation expressly mandates applying those rules; and rules of constructive ownership are applied in some contexts, but in other contexts only direct and indirect ownership are considered.

In sum, at the point the trial court acknowledged that the federal tax laws do not address a "comparable context," under Michigan law, it should have used the ordinary rules of statutory construction. Mere similarity between the language used in Revenue Admin Bull 2010-1 and that of 26 USC 318(a)—which does not provide the "meaning" of the term at issue—is not a reason to ignore the lack of comparable context or to overlook the distinction in 26 USC 958 between "direct and indirect ownership" and "constructive ownership."

B.

---

[2] "Tiering" occurs, for example, when there is "a corporation which is owned by a corporation which in turn is owned by a foreign state." *In re Air Crash Disaster Near Roselawn*, 96 F3d 932, 939 (CA 7, 1996).

Accordingly, because there is no comparable federal context in the IRC, we now turn our attention to the plain and ordinary meaning of MCL 208.1117(6). See *Town & Country*, 420 Mich at 240.

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, [t]he words of a statute provide the most reliable evidence of its intent . . . . [*Krohn v Home-Owners Ins Co*, 490 Mich 145, 156-157; 802 NW2d 281 (2011) (quotation marks and citations omitted).]

The statutory language at issue in MCL 208.1117(6) is "owns or controls, directly or indirectly." "Indirectly" is the adverbial form of "indirect," which the parties do not disagree "connotes a pathway that is not straight, i.e., a course that does not proceed along a single line from one point to another, but instead, proceeds through an intermediate point." *New Oxford American Dictionary* (3d ed) defines the adverb "indirectly" as "**1** in a way that is not directly caused by something; incidentally: *the losses indirectly affect us all.* **2** without having had direct experience; at second hand: *I heard of the damage indirectly.* **3** through implication; obliquely: *both writers refer, if only indirectly, to a wealth of other art.*" In relevant part, *Merriam-Webster's Collegiate Dictionary* (11th ed) defines the adjective "indirect" as: "not direct: as **a** (1) : deviating from a direct line or course : ROUNDABOUT (2) : not going straight to the point <an [indirect] accusation> . . . **c** : not directly aimed at or achieved <[indirect] consequences>." *New Oxford* also has definitions of "indirect" that are similar to *Merriam-Webster*'s, but notably includes, "not done directly; conducted through intermediaries." This is consistent with its definitions of "indirectly": all three of the examples given by *New Oxford* involve an intermediary and are closer in context than the "pathway" or "course" definitions.

*Black's Law Dictionary* (10th ed) does not define "indirect ownership," but under "possession," it points from "indirect possession" to "mediate possession," which means: "Possession of a thing through someone else, such as an agent. [] In every instance of mediate possession, there is a direct possessor (such as an agent) as well as a mediate possessor (the principal).—Also termed *indirect possession*." In accord with this, 11 Fletcher Cyclopedia of the Law of Corporations, § 5090, p 55, begins its description of "Indirectly held shares" thusly, "Most investors who hold publicly traded shares hold them indirectly through a broker-dealer or bank, which in turn holds its customers' shares indirectly through a clearing house or central depository."

Therefore, consistent with the above definitions and descriptions, we hold that indirect ownership in MCL 208.1117(6) means ownership *through an intermediary*, not ownership by operation of legal fiction, as defendant urges.

While federal law often substitutes rules of constructive ownership when addressing stock indirectly owned, it does not do so consistently, and constructive rules only apply when the

statute specifically so directs, which MCL 208.1117(6) does not. Notably, defendant's own argument cannot avoid using the phrase "considered as owned"—language that is absent in MCL 208.1117(6). The constructive ownership rules from federal law may apply when a statute involves stock "owned or considered as owned," but to apply it to MCL 208.1117(6) expands the statute beyond the meaning intended by the Legislature.

Applying MCL 208.1117(6) to the facts of this case, it is clear that no unitary business group exists because none of the involved entities (plaintiff, Pixie, and LaBelle Limited Partnership) owns, through an intermediary or otherwise, more than 50% of any other entity. Accordingly, plaintiff is entitled to summary disposition as a matter of law.

Reversed and remanded for entry of summary disposition in favor of plaintiff. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray

-8-