# STATE OF MICHIGAN

# COURT OF APPEALS

TOTAL ARMORED CAR SERVICE, INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

FOR PUBLICATION
July 24, 2018
9:10 a.m.

No. 340495
Michigan Tax Tribunal
LC No. 16-003017-TT

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Following an audit, the Department of Treasury determined that Total Armored Car Services, Inc. (TACS) had underpaid its taxes in three tax years. TACS filed a petition in the Michigan Tax Tribunal (MTT), challenging the department's disallowance of certain deductions and credits, and later adding a claim that it should be treated as a lone tax unit rather than as a collective taxpayer. The MTT summarily dismissed the petition. We discern no error in the MTT's judgment and affirm.

## I. BACKGROUND

In November 2012, the department conducted an audit of TACS's business tax returns for 2008 through 2011 and determined that TACS had underpaid by $144,924 for tax years 2009, 2010 and 2011. Part of this underpayment arose from the misclassification of items as materials and supplies for deduction under MCL 208.1113(6)(c) and part was due to miscalculation of the employee compensation credit provided in MCL 208.1403(2). TACS challenged the auditor's conclusions to no avail. It then filed a petition with the MTT. In addition to the objections raised directly to the audit, TACS noted before the MTT hearing that it had filed its taxes as part of a unitary business group (UBG) with seven sister corporations but that it actually counted as a single tax entity pursuant to *LaBelle Mgmt, Inc v Michigan Dep't of Treasury*, 315 Mich App 23; 888 NW2d 260 (2016). Accordingly, TACS generally asserted that its tax liability was no longer accurately calculated.

-1-

The MTT ultimately granted summary disposition in the department's favor and ordered TACS to pay its tax liability with interest. TACS now appeals.

## II. STANDARD OF REVIEW

We review de novo the MTT's decision on a motion for summary disposition. *Moshier v Whitewater Twp*, 277 Mich App 403, 407; 745 NW2d 523 (2007). We also review de novo the MTT's interpretation of statutory provisions. *Id*. However, generally, our review is "limited to determining whether the tribunal erred in applying the law or adopted a wrong principle." *Id*. The MTT's "factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578, 583 (2011) (quotation marks and citation omitted).

## III. MATERIALS AND SUPPLIES DEDUCTION

In tax year 2010, TACS deducted from its gross receipts $12,712,186 in materials and supplies and $24,567,291 for tax year 2011.[1] According to the audit report, these deductions included the cost of "repairs and maintenance, gas and oil, parts, rental equipment, lease contract, outside courier services, contract labor and purchased transportation." The department determined that costs "related to operating leases, contract labor, purchased transportation, and outside courier services" were improperly included in this category and adjusted the deductions for 2010 and 2011 accordingly.

TACS contends that the disallowed items are "materials and supplies" deductible from gross receipts under MCL 208.1113(6). The Business Tax Act (BTA) imposes a business income tax and a modified gross receipts tax against taxpayers with business activity in Michigan. MCL 208.1201; MCL 208.1203. A business's modified gross receipts tax base may be reduced by certain credits and deductions. One deduction is for "purchases from other firms," MCL 208.1113(6), which includes:

(a) Inventory acquired during the tax year, including freight, shipping, delivery, or engineering charges included in the original contract price for that inventory.

(b) Assets, including the costs of fabrication and installation, acquired during the tax year of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes.

(c) To the extent not included in inventory or depreciable property, materials and supplies, including repair parts and fuel.

---

[1] In its appellate brief, TACS asserts, contrary to the audit report, that it claimed a deduction of $12,712,186 in 2009, and $24,567,291 in 2010.

The auditor determined that "Materials and Supplies means tangible personal property," not services such as those reported by TACS. This is consistent with the plain language of MCL 208.1113(6).

Our goal when interpreting statutes is to ascertain the Legislature's intent. *Cook v Dep't of Treasury*, 229 Mich App 653, 658-659; 583 NW2d 696 (1998). The best indicator of that intent is the plain language of the statute. *Ferguson v City of Lincoln Park*, 264 Mich App 93, 95-96; 694 NW2d 61 (2004). If the language is clear and unambiguous, we must apply the statute as written. *Id*. In reading and applying the plain language of a statute, we must give effect "to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citations omitted). And when defining words in a statute, "we must consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008) (quotations marks and citation omitted).

When read as a whole, MCL 208.1113(6) defines the purchases-from-other-firms deduction as inventory acquired in the tax year, assets acquired during the tax year that are eligible for depreciation for federal tax purposes, or any other material and supplies, such as repair parts or fuel, not included in either inventory or depreciable property. While subparagraphs (a) and (b) include services related to the acquisition of inventory or assets (costs for installation, shipping and engineering), subparagraph (c) includes only tangible items of property not included in inventory or assets. The BTA does not define "materials and supplies." When the Legislature does not provide a definition for the words used in a statute, we may look to dictionary definitions. *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005). The terms "materials and supplies," when used in their noun form as in the statute, are defined as physical items. "Material" means "relating to, derived from, or consisting of matter[,]" and "being of a physical or worldly nature[.]" *Merriam-Webster Collegiate Dictionary* (11th ed), p 765. "Supplies," in its noun form, means "provisions" or "stores." *Id*. at p 1256.[2]

Moreover, the qualifying clause immediately following "materials and supplies"— "including repair parts and fuel"—indicates an intent to limit materials and supplies to tangible property. This phrase, when read in context, provides examples of the type of tangible property that may be included within the meaning of materials and supplies. While the term "including" suggests a nonexhaustive list of items within the category of "materials or supplies," the examples are both tangible and physical. "Under the statutory construction doctrine known as *ejusdem generis*, where a general term follows a series of specific terms, the general term is interpreted to include only things of the same kind, class, character, or nature as those specifically enumerated." *Neal v Wilkes*, 470 Mich 661, 669; 685 NW2d 648 (2004) (quotation

---

[2] TACS relies on the verb form of "supply" to interpret the statute as including services within the definition of "materials and supplies." TACS thereby takes the word out of its grammatical context.

marks and citation omitted). Accordingly, the type of property included in the definition of "materials and supplies" is limited to tangible items.

Given the plain language of MCL 208.1113(6), we discern no error in the MTT's dismissal of TACS's challenge to the department's audit.

## IV. COMPENSATION CREDIT

The department also determined that TACS overstated the compensation earned by employees of E.L. Hollingsworth (another member of the UBG) in 2009 and 2010. In 2009, TACS reported a compensation credit of $12,575,339 and in 2010, $10,897,553.[3] These figures were based solely on the residencies of the employees, not "on actual work (miles driven) performed within the state of Michigan." The auditor reasoned that TACS was only entitled to 100% of the compensation credit if 100% of a particular employee's miles were driven in Michigan. By implication, TACS was entitled to a reduced credit when an employee earned a portion of his or her compensation while driving within Michigan, but also earned compensation while driving out of state.

The BTA provides a tax credit to reduce a taxpayer's liability for "compensation in this state." Specifically, "a taxpayer may claim a credit against the tax imposed by this act equal to 0.370% of the taxpayer's compensation in this state." MCL 208.1403(2). The phrase "compensation in this state" is not defined by statute.

Contrary to the MTT's ruling, the phrase "compensation in this state" is not ambiguous. MCL 208.1107(2) defines "compensation" as "all wages, salaries, fees, bonuses, commissions, other payments made in the tax year on behalf of or for the benefit of employees, officers, or directors of the taxpayers, and any earnings that are net earnings from self-employment . . . ." "Wages," "salaries," and "commissions," by their plain meanings, are payments for work or services performed. See, e.g., *Black's Law Dictionary* (10th ed) (defining "wages" as "payment for labor or services and "salary" as "compensation for services"). By defining "compensation" as wages, salaries, commissions and other such payments, the Legislature recognized that "compensation" is essentially remuneration received in return for services rendered or work performed.

But what did the Legislature intend in using the phrase "compensation *in this state*"? Giving effect to every word of the statute and with the statutory definition of "compensation" in mind, it is clear that the Legislature intended for the credit to apply only to work or services performed in the state of Michigan. When the definition of "compensation" is inserted into the phrase "compensation in this state," it provides that the credit is available for "[remuneration for services or work performed] in this state." Following TACS's proposal, on the other hand, would require us to add terms and conditions into the statute. The statute makes no reference to the residency of the subject employees, nor does the definition of the specific words used.

---

[3] The compensation credit figures cited by TACS in its appellate brief do not match the figures provided in the audit report for the tax years in question.

Ultimately, although the MTT's reasoning was flawed, it reached the correct result. TACS is therefore not entitled to relief. See *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

TACS further argues, for the first time on appeal, that the services rendered by an employee should "be sourced based upon single items of income," meaning that "[i]f transportation services [were] performed pursuant to an annual or long term contract, the compensation was generated at the time of the creation of the contract and therefore sourced to the state in which the contract was entered." Under this theory, further discovery would be necessary to ascertain where the subject employees entered into their contracts.

We review unpreserved challenges for plain error. To establish an entitlement to relief based on plain error, the injured party "must show (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected [its] substantial rights." *Henderson v Dep't of Treasury*, 307 Mich App 1, 9; 858 NW2d 733 (2014) (quotations marks and citation omitted). To merit relief, the injured party must show prejudice, i.e., that the error affected the outcome of the MTT proceedings. *Id*.

No error occurred in this regard. The "single items of income" concept simply is not the law of Michigan. Rather, TACS culled it from model regulations drafted by the Multistate Tax Commission. Moreover, TACS has made no calculations to show how this reformation of the law would impact its tax liability. Accordingly, it cannot show that it suffered any prejudice.

## V. UBG STATUS

TACS finally challenges the MTT's failure to apply *LaBelle* to deconstruct its UBG and then to order TACS and the department to restart the tax filing process for the years in question.

*LaBelle* was issued on March 31, 2016, three months before TACS filed its petition, but its effect was stayed until disposition of the department's application for leave to appeal before the Supreme Court. See *LaBelle*, 315 Mich App at 23. The Supreme Court denied leave on January 24, 2017. *LaBelle Mgmt, Inc v Dep't of* Treasury, 500 Mich 931 (2017). The department sought summary disposition in this case approximately three months after the Supreme Court's *LaBelle* decision.

TACS contends that the MTT "reversibly erred in denying what, in practical effect, amounted to [its] motion for leave to amend its Petition" to apply *LaBelle*. TACS does not deny that it never directly requested to file an amended petition. It did, however, raise its claims under *LaBelle* in its prehearing statement. The department sought to strike TACS's argument as it had not been raised in the petition. The MTT denied the motion to strike, ordered supplemental briefing on the issue, and actually considered TACS's claim before entering its final judgment. In "practical effect," the MTT allowed TACS "to amend its Petition" as it fully considered the claim.

The MTT also did not err in denying TACS relief under *LaBelle*. In *LaBelle*, 315 Mich App at 30, this Court considered how to define the term "owns or controls . . . indirectly" as used in MCL 208.1117(6), the BTA provision defining a UBG. Specifically, MCL 208.1117(6) defines a UBG as

-5-

a group of United States persons, other than a foreign operating entity, 1 of which owns or controls, directly or indirectly, more than 50% of the ownership interest with voting rights or ownership interests that confer comparable rights to voting rights of the other United States persons, and that has business activities or operations which result in a flow of value between or among persons included in the [UBG] or has business activities or operations that are integrated with, are dependent upon, or contribute to each other. For purposes of this subsection, flow of value is determined by reviewing the totality of facts and circumstances of business activities and operations.

In *LaBelle*, 315 Mich App at 37, this Court held that indirect ownership or control means ownership "through an intermediary, not ownership by operation of legal fiction[.]" It followed that because neither the plaintiff nor the related entities owned through an intermediary or otherwise more than 50% of any other entity, the department had improperly characterized the plaintiff as part of a UBG. *Id*. at 37-38.

The procedural posture of *LaBelle* is distinguishable from the case now before us. In that case, the plaintiff corporation had filed an individual business tax return and during an audit, the department determined that it should have filed a combined return as part of a UBG with two related entities. *Id*. at 26-27. The Court of Claims affirmed the tax deficiency, but this Court reversed because insufficient indirect ownership existed to characterize the plaintiff as part of a UBG. *Id*. at 28, 37-38. Here, TACS sought reconsideration of the MTT's ruling, arguing that the MTT should have ordered it to file amended individual tax returns for the years in question and ordered the department to accept those filings. As the MTT sagely concluded, however, TACS never requested such relief and it was not the MTT's duty to direct TACS on how to prove its case. And TACS's failure to file amended returns, or even to present amended tax returns to the MTT, meant it could not establish prejudice.

The MTT further opined that other pragmatic reasons existed for not applying *LaBelle*. For example, TACS's seven sister corporations were not parties to the lawsuit and the MTT was hesitant to allow TACS to speak as a representative of all. The other entities may be harmed by the separation, creating a conflict of interest. There was no record indication that any of the other UBG members had taken steps to exhaust their administrative remedies. Moreover, no member of the UBG had attempted to file an individual tax return. Their individual tax liabilities, like TACS's individual tax liability, were hypothetical only. TACS has challenged none of these reasons.

Even if TACS had properly developed its argument, it would not be entitled to relief as its claim is not ripe for adjudication. As TACS has never attempted to file an individual tax return, the department has never determined whether TACS could be an individual taxpayer or

whether it must file as part of a UBG. TACS has yet to be aggrieved by the department in this regard. And only aggrieved parties have standing to pursue claims. *Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008).

We affirm.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Anica Letica