*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHAMAR AVERY,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN,

        Defendant-Appellee.

FOR PUBLICATION
March 2, 2023
9:35 a.m.

No. 359535
Court of Claims
LC No. 17-000245-MZ

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

REDFORD, J.

        Plaintiff, Chamar Avery, appeals by right the Court of Claims verdict of no cause of action respecting his Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*., claim. We affirm.

## I. BACKGROUND

        Following a trial in 2000, a jury convicted plaintiff of second-degree murder related to the January 15, 2000 robbery and murder of Geoffrey Stanca. The trial court sentenced plaintiff to 20-50 years' imprisonment. Plaintiff appealed and this Court remanded for a *Ginther*[1] hearing at which the trial court heard testimony and arguments and held that plaintiff's trial counsel provided him effective assistance. This Court affirmed his conviction and sentence.[2] Our Supreme Court denied leave to appeal.[3]

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Avery*, unpublished per curiam opinion of the Court of Appeals issued October 8, 2002 (Dkt No 229324).

[3] *People v Avery*, 468 Mich 891 (2003).

After plaintiff exhausted his appeals, in 2004 he petitioned the United States District Court for the Western District of Michigan for a writ of habeas corpus on grounds that his trial counsel provided him ineffective assistance. The federal court granted plaintiff's petition on the ground that plaintiff's trial counsel provided ineffective assistance by not investigating and presenting an alibi defense at his criminal trial. The federal court entered a writ of habeas corpus and instructed the State of Michigan to release plaintiff from custody and afford him a new trial.[4] The Department of Corrections released plaintiff and the prosecution never retried him for the Stanca murder. Plaintiff filed his WICA complaint in 2017 claiming wrongful incarceration entitling him to statutory compensation of $382,859.10 for 2,795 days' time served, plus attorney fees and costs.

The trial court conducted a bench trial at which plaintiff testified that he did not participate in the Stanca murder with Recho Burns and Terrance Holmes, but had been with Lavelle Crimes, Damar Crimes, and Darius Boyd the afternoon and night of January 15, 2000, when the Stanca murder occurred. Lavelle and Damar testified on behalf of plaintiff similar to their testimonies at plaintiff's 2001 *Ginther* hearing. Lavelle testified that he worked on plaintiff's car at Crimes Towing, and that his brother Damar came to the shop, and plaintiff left with him and returned later after he completed plaintiff's auto repairs. Damar testified that he and plaintiff walked to Boyd's house where they stayed until they received a call from Lavelle regarding the completed repairs. He testified that he and plaintiff walked back to the shop, picked up plaintiff's car, then drove to a female friend's house, and later back to Boyd's house where plaintiff left him.

Defendant called Jacklyn Barker who testified that, on January 15, 2000, she heard a car arrive in front of her house so she went to the door, looked out its windows and saw a car parked the wrong way on her one-way street. She turned away briefly but heard a gunshot and turned back to see the car door opening and three men get out one by one. One of them pushed a body out to the ground. Two of them ran off in the same direction and one ran the opposite way. She did not recognize plaintiff at first. He started toward Central at the end of her street, but he then turned around and kneeled down by the rear passenger back door tire area and seemed to pick something up. When he kneeled down, he looked in the direction of Barker's door where she stood, paused and retrieved something, then turned and ran toward Central. When Barker saw plaintiff look at her house, she recognized him because she saw his face and knew him from the neighborhood. Barker testified that she also recognized the other two men as Holmes and Burns.

Barker admitted on cross-examination that she did not inform the police and that later she did not pick out plaintiff in a line-up or photo identifications. She explained that she had been afraid. Plaintiff's counsel cross-examined Barker regarding her preliminary examination and trial testimony. Barker acknowledged some discrepancies and did not deny her preliminary examination or trial testimonies, and testified as she had done in both of those instances that she saw plaintiff and recognized him as one of the perpetrators of the Stanca murder. On further direct examination, Barker testified that she had no doubt in her mind that she saw plaintiff outside her house on January 15, 2000.

---

[4] *Avery v Prelesnik*, 524 F Supp 2d 903, 906-911 (WD Mich, 2007). The United States Court of Appeals for the Sixth Circuit affirmed. *Avery v Prelesnik*, 548 F Supp 3d 434 (CA 6, 2008).

Defendant called Holmes to testify. Holmes affirmed that on November 8, 2000, he pleaded guilty to Stanca's murder. The defense had the transcript of Holmes's plea testimony marked as Defense Exhibit B and announced that defendant would seek admission of the exhibit under MRE 801(d)(1)(a). Plaintiff's counsel stated that she had no objection. The trial court, therefore, admitted the transcript of Holmes's previous testimony.

Holmes denied that he previously stated that Burns shot and killed Stanca but agreed that he testified under oath at his plea hearing. Defense counsel had Holmes review the transcript of his plea hearing where the court asked him what happened and he answered that Burns "got in the car, shot him in the head." Holmes affirmed that he testified in November of 2000 when he pleaded guilty to armed robbery. He admitted that he testified that, on the night of January 15, 2000, near the location of 7733 Dayton Street in Detroit, he, Burns, and plaintiff were together. He affirmed that he testified that he, Burns, and plaintiff arranged to rob Stanca, the pizza delivery man. After feigning lack of memory, Holmes reviewed the transcript of his plea testimony and affirmed that he testified that plaintiff was in the car with Burns. After reviewing his testimony regarding running to Central Street, Holmes testified: "I don't remember none of this. But that's what it's saying, so, I guess I did. I don't remember none of this." During cross-examination, Holmes denied killing Stanca, denied involvement with the people who killed him, denied being on Dayton Street on January 15, 2000, and denied being with plaintiff or even seeing him that day. On further direct examination, Holmes affirmed that at the plea hearing the court asked if he had been promised anything or been forced to plead guilty, and he answered no. Holmes also affirmed that, when asked by the court whether he pleaded guilty freely and voluntarily, he answered yes. Defense counsel asked Holmes regarding his plea testimony which asked with whom he had been, to which he had answered Burns and plaintiff; and when asked what the three of them did, he had answered, "Went to rob the pizza man." When later asked if he remembered apologizing to the victim's family, he affirmed that he remembered.

The trial court asked Holmes how at the time of his plea hearing he could testify in such great detail regarding the plan to set up the robbery and the details of Stanca's murder. Holmes stated that he heard the story on the streets and repeated it for his plea deal. On further cross-examination, plaintiff's counsel sought to develop how Holmes knew the details of the crime, but Holmes denied hearing the details of the crime in the neighborhood and only that he heard that Stanca had been shot in an apparent robbery.

The trial court issued a written opinion and order in which it stated its findings of fact and conclusions of law. The trial court explained the applicable law regarding WICA claims, including that plaintiff must prove by clear and convincing evidence that he did not commit the crimes for which he was imprisoned. The trial court found that plaintiff proved by clear and convincing evidence that he was convicted of second-degree murder and sentenced to life imprisonment for which he served eight years of the sentence. The court also found that plaintiff proved by clear and convincing evidence that his conviction was vacated and he had not been retried by the prosecution. The trial court, however, found that plaintiff failed to meet his burden of proving by clear and convincing evidence that he did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of his conviction. The trial court explained that it came to its conclusion for two reasons: (1) Barker testified credibly to seeing plaintiff's face at the crime scene on the night of the January 15, 2000, and nothing indicated any motive for her to accuse plaintiff or lie about his being there; and (2) Holmes testified under oath in great detail at his plea

hearing without leading questions that he, plaintiff, and Burns, pursuant to an elaborate plan, committed the robbery and killing of Stanca, fled the scene, then met to split the money. The trial court found that Holmes's plea hearing testimony supported the proposition that plaintiff perpetrated the crime. The trial court explained further that the other witnesses' testimonies did not tip the scales toward clear and convincing evidence that plaintiff did not perpetrate the crime. The court, therefore, concluded that clear and convincing evidence did not establish that plaintiff did not perpetrate the crime because the court was in no way left "with 'a clear conviction, without hesitancy, of the truth' that plaintiff did not perpetrate the crime." Accordingly, the trial court ordered entry of a judgment of no cause of action and dismissed plaintiff's case with prejudice. Plaintiff now appeals.

## II. STANDARDS OF REVIEW

Issues regarding statutory interpretation present questions of law that this Court reviews de novo. *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021). We also review de novo the WICA's compensation provisions. *Ricks v State*, 507 Mich 387, 396; 968 NW2d 428 (2021). We review de novo questions of law, including which party bears the burden of proof. *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009). The applicability of a legal presumption is a question of law for the trial court to determine. *Widmayer v Leonard*, 422 Mich 280, 288; 373 NW2d 538 (1985); *Isabella Co Dept of Social Servs v Thompson*, 210 Mich App 612, 615; 534 NW2d 132 (1995).

We review a trial court's findings of fact at a bench trial for clear error and review its conclusions of law de novo. *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 279; 829 NW2d 345 (2013). Although plaintiff argues that the trial court's findings are contrary to the great weight of evidence, in the context of a bench trial, a great weight argument is addressed under the "clearly erroneous" standard. *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652 n 14; 662 NW2d 424 (2003). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group, LLC v City of Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010). "An appellate court will give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Ambs*, 255 Mich App at 652 (quotation marks and citation omitted).

## III. ANALYSIS

### A. THE USE OF A TRIAL PROCESS IN A WICA CASE

Plaintiff first argues that the trial court erred by ordering a trial and basing its decision on evidence other than the evidence presented at the 2001 *Ginther* hearing, which ultimately led to the vacating of his conviction and release from prison. Plaintiff made no objection to the trial court's decision to conduct a trial, nor did he object to the scope or type of evidence that could be presented by the parties except to the extent that such would be inadmissible under the rules of evidence, which the trial court addressed to the parties' satisfaction. Therefore, plaintiff failed to preserve this issue for appeal.

-4-

Unpreserved errors are reviewed for plain error. *Total Armored Car Serv, Inc v Dep't of Treasury*, 325 Mich App 403, 412; 926 NW2d 276 (2018). "To establish an entitlement to relief based on plain error, the injured party must show (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected [its] substantial rights." *Id.* (quotation marks and citation omitted; alteration in original). "To merit relief, the injured party must show prejudice, i.e., that the error affected the outcome of the . . . proceedings." *Id.* (citation omitted).

The WICA, MCL 691.1751, *et seq.*, governs this appeal. "The primary goal of statutory interpretation is to give effect to the Legislature's intent. To do that, we read a statute's provisions reasonably and in context." *Ricks*, 507 Mich at 397 (quotation marks and citations omitted). "A statute's language 'offers the most reliable evidence of the Legislature's intent.' " *Id.* (citation omitted). "When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written." *Sanford v State*, 506 Mich 10, 15; 954 NW2d 82 (2020) (citation omitted).

MCL 691.1753 permits:

> An individual convicted under the law of this state and subsequently imprisoned in a state correctional facility for 1 or more crimes that he or she did not commit may bring an action for compensation against this state in the court of claims as allowed by this act.

MCL 691.1754 provides in relevant part:

> (1) In an action under this act, the plaintiff shall attach to his or her verified complaint documentation that establishes all of the following:
>
> (a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.
>
> (b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or on retrial the plaintiff was found to be not guilty.
>
> (c) New evidence demonstrates that the plaintiff was not the perpetrator of the crime or crimes and was not an accessory or accomplice to the acts that were the basis of the conviction and resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges, finding of not guilty, or gubernatorial pardon.

MCL 691.1752(b) defines "new evidence" as follows:

> "New evidence" means any evidence that was not presented in the proceedings leading to plaintiff's conviction, including new testimony, expert interpretation, the results of DNA testing, or other test results relating to evidence that was presented in the proceedings leading to plaintiff's conviction. New evidence does not include a recantation by a witness unless there is other evidence to support the recantation or unless the prosecuting attorney for the county in which

the plaintiff was convicted or, if the department of attorney general prosecuted the case, the attorney general agrees that the recantation constitutes new evidence without other evidence to support the recantation.

In *Maples v State*, 507 Mich 461, 475-477; 968 NW2d 446 (2021), our Supreme Court clarified that "new evidence" under the WICA is evidence that was not presented to the trier of fact at a proceeding that adjudicated guilt even if the convicted person knew of the evidence at the time of trial.

MCL 691.1755 in relevant part provides:

(1) In an action under this act, the plaintiff is entitled to judgment in the plaintiff's favor if the plaintiff proves all of the following by clear and convincing evidence:

(a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

(b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.

(c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.

This Court has explained that:

[t]he clear and convincing evidence standard is the most demanding standard applied in civil cases. Evidence is clear and convincing if it

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

Evidence may be uncontroverted, and yet not be "clear and convincing." Conversely, evidence may be "clear and convincing" despite the fact that it has been contradicted." [*In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks, citations, and brackets omitted); see also *In re Brody Conservatorship*, 321 Mich App 332, 337; 909 NW2d 849 (2017).]

In *Ricks,* our Supreme Court explained the WICA's purpose and two-step inquiry as follows:

> The WICA was enacted "to provide compensation and other relief for individuals wrongfully imprisoned for crimes; to prescribe the powers and duties of certain state and local governmental officers and agencies; and to provide remedies." 2016 PA 343, title. It waives sovereign immunity and allows a person who was wrongfully convicted and imprisoned to seek compensation by bringing an action against the state in the Court of Claims. MCL 691.1753.

> The WICA has two steps. The first determines whether a claimant is eligible for compensation. See MCL 691.1755(1). The second calculates the precise amount of compensation that must be awarded to eligible claimants. See MCL 691.1755(2).

> Step one: The WICA defines who is eligible for compensation at MCL 691.1755(1). A successful WICA claimant must have been convicted of at least one crime under Michigan law, must have been sentenced to a term of imprisonment in a state correctional facility, and must have served at least part of the sentence for that crime. MCL 691.1755(1)(a). The claimant's conviction must have been reversed or vacated, and the claimant must prove that their charges were subsequently dismissed or that they were acquitted upon retrial. MCL 691.1755(1)(b). Finally, the claimant must prove by clear and convincing evidence that the reason they can satisfy the requirements set forth in Subdivision (b) is because new evidence shows that they "did not perpetrate the crime and [were] not an accomplice or accessory to the acts that were the basis of the conviction . . . ." MCL 691.1755(1)(c). If the claimant satisfies all of these requirements, they are "entitled to judgment" in their favor. MCL 691.1755(1).

> Step two: Subject to two exceptions, once a court finds that a plaintiff was wrongfully convicted and imprisoned, it "shall award compensation" according to the provisions set forth in MCL 691.1755(2). The court must award $50,000 "for each year from the date the plaintiff was imprisoned until the date the plaintiff was released from prison . . . ." MCL 691.1755(2)(a). [*Ricks*, 507 Mich at 395-396.]

Under MCL 691.1753, an action brought under the WICA is a civil action that must be brought in the Court of Claims. MCL 600.6422 provides in relevant part:

> (1) Practice and procedure in the court of claims shall be in accordance with the statutes and court rules prescribing the practice in the circuit courts of this state, except as otherwise provided in this section.

> 2) The supreme court may adopt special rules for the court of claims.

MCR 1.103 specifies that the Michigan Court Rules govern practice and procedure in all Michigan courts. The WICA does not prohibit the Court of Claims from conducting a trial for purposes of determining whether the plaintiff was wrongfully imprisoned and entitled to compensation under the act. Our Supreme Court has not adopted special rules for the Court of Claims respecting actions

brought under the WICA. No statute, rule, or case prohibits the Court of Claims from conducting a trial in an action brought under the WICA. Plaintiff has not cited any law that supports his position. Accordingly, plaintiff has failed to establish that the Court of Claims committed plain error by conducting a trial.

Moreover, the record reflects that plaintiff agreed and did not object to the trial court's conducting a trial in this case. He participated fully in pretrial procedures all geared toward a trial on the merits. "A waiver consists of the intentional relinquishment or abandonment of a known right." *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018) (citation omitted). Plaintiff's failure to object and his conduct indicating his approval to have a trial conducted on his claim, demonstrates that plaintiff waived any objections respecting conducting a trial in this matter.

Plaintiff's argument that the trial court could only consider the evidence presented at his 2001 *Ginther* hearing and nothing else lacks any legal support. Further, doing so would prevent the trial court from fulfilling its legislatively mandated judicial responsibility to determine whether plaintiff proved by clear and convincing evidence that he did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of his conviction. Plaintiff simply misreads MCL 691.1752(b) and MCL 691.1755(1)(c) as limiting "new evidence" when the WICA does not do that. We hold, the trial court had authority to conduct a trial in this matter and consider all the evidence presented by the parties before rendering its decision. Accordingly, the trial court did not plainly err. Plaintiff, therefore, has failed to establish any right to relief.

## B. WICA DOES NOT REQUIRE A TRIAL COURT TO PRESUME A PLAINTIFF IS INNOCENT

Plaintiff next argues that the trial court erred by failing to presume plaintiff innocent before assessing whether he proved his innocence by clear and convincing evidence. He contends that the trial court had to presume him innocent until defendant presented a preponderance of evidence that overcame the presumption, and only then could the trial court proceed to analyze whether plaintiff met his burden that a demonstration of innocence resulted in his charges being vacated. We disagree.

Unlike a criminal case in which the defendant is presumed innocent and therefore does not bear the burden of persuasion, the WICA imposes an affirmative duty on the plaintiff to prove by clear and convincing evidence that he did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of his conviction. MCL 691.1755. The WICA does not impose a burden shifting proof structure. The WICA does not require the State to proffer any proofs whatsoever but places the burden entirely on the plaintiff to plead and then prove with clear and convincing evidence his innocence of the crimes for which he was incarcerated.

Plaintiff's reliance on *Monaghan v Agricultural Fire Ins Co*, 53 Mich 238, 255; 18 NW 797 (1884), is misplaced. *Monaghan* involved an insurance dispute in which the defendant insurer refused to pay a claim of loss occasioned by a fire on the ground that the claimant submitted a false claim to defraud the insurer. *Id*. at 242. In its defense, the insurer presented evidence tending to prove that the claimant with help removed from the house and concealed personal property before the house burned, and then submitted an affidavit listing the concealed items as lost in the fire. *Id*. at 250. In support of its defense, the insurer introduced testimony that the claimant caused the

building to be burned. The trial court instructed the jury that the insurer contended that the claimant committed arson, a serious crime, but cautioned the jury that the claimant was presumed "innocent of crime, until it is established by competent proof" in the civil suit just as in a criminal case. The court instructed, however, that the insurer making the charge had the burden of proof to establish the truth of the charge by a preponderance of the evidence and the insurer bore the burden of proof for its denial of the claim. *Id*. at 254. On appeal the insurer took exception to that portion of the jury instructions. Our Supreme Court indicated that the trial court did not err by stating in the instructions that the presumption of innocence attended the claimant, but it ruled that the trial court failed to appropriately instruct the jury because they may have been misled to apply the reasonable doubt burden of proof instead of the preponderance standard of proof applicable to civil controversies. *Id*. at 255.

*Monaghan* is distinguishable not only by its facts but by the law that applied to the case. The insurer bore the burden of proof on its defense. In this case, plaintiff had been convicted by a jury of a serious crime and incarcerated because of the finding of guilt. In the underlying criminal case, the prosecution met its burden of proving defendant's guilt beyond a reasonable doubt. After he exhausted all appeals, the federal courts granted plaintiff's habeas corpus petition and ordered his release from prison because his trial counsel failed to provide him effective assistance in violation of his constitutional right to such. The federal courts did not exonerate plaintiff or make any declaration that he was free from guilt.

Under the WICA, by statute, plaintiff bore the burden of establishing by clear and convincing evidence his innocence of the crime for which he had been incarcerated. The WICA nowhere imposes any burden of proof upon the defendant, sets up a rebuttable presumption the defendant must overcome, or even requires the defendant to proffer any proof. Requiring a WICA defendant to overcome the presumption of innocence is contrary to the legislative intent that the plaintiff must prove his innocence to establish that his conviction and resulting incarceration were wrongful, entitling him compensation. If a WICA plaintiff could claim the presumption of innocence, the statutory burden of proof and the WICA procedure set forth in *Ricks* would be rendered meaningless. Statutory provisions should not be construed in a manner that renders their language meaningless and such construction must be avoided. *Robinson v City of Lansing*, 486 Mich 1, 17-18; 782 NW2d 171 (2010). The trial court, therefore, did not err by not adopting the shifting burden of proof advocated by plaintiff.

## C. THE TRIAL COURT'S FACTUAL FINDINGS WERE NOT AGAINST THE GREAT WEIGHT OF THE EVIDENCE

Plaintiff also argues that the trial court's finding that Barker testified credibly went against the great weight of the evidence because he contends that her testimonies at the preliminary examination and criminal trial and again in this case were inconsistent and failed to undermine plaintiff's testimony. We disagree.

Following a bench trial, when a plaintiff argues that the trial court's findings are contrary to the great weight of evidence, such argument is addressed under the "clearly erroneous" standard. *Ambs*, 255 Mich App at 652 n 14. "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group, LLC*, 288 Mich App at 251. We "give deference to the trial court's

superior ability to judge the credibility of the witnesses who appeared before it". *Ambs*, 255 Mich App at 652 (quotation marks and citation omitted).

The trial court's credibility finding regarding Barker was not clearly erroneous because it considered the entire record before it, including historical inconsistencies in Barker's conduct and inconsistencies in her various testimonies. The record indicates that plaintiff had adequate opportunity to cross-examine Barker and attempt to discredit her and demonstrate her lack of reliability. The record, however, establishes that Barker actually testified consistently regarding her identification of plaintiff at the scene of Stanca's robbery and murder. She unequivocally testified that plaintiff participated in the commission of the crimes and she recognized him because she knew him from the neighborhood. The various inconsistencies plaintiff brought to the trial court's attention do not leave us with a definite and firm conviction that the trial court made a mistake in finding Barker's testimony credible. Further, the trial court heard Holmes's testimony and his cross-examination which disclosed his plea hearing testimony in which he identified plaintiff as a participant in the planning and perpetration of Stanca's robbery and murder. The record indicates that the trial court made findings supported by evidence in the record, made necessary determinations regarding the credibility of the witnesses who testified before it, weighed all of the evidence, and rendered a judgment supported by the evidence.

We are not persuaded that the trial court erred in this case, given the deference that this Court accords to the trial court's superior ability to judge the credibility of the witnesses who appeared before it. Further, the trial court provided a detailed explanation for its credibility determinations in its opinion which guided its ultimate decision that plaintiff failed to establish by clear and convincing evidence his innocence. The evidence in this case supports the trial court's ultimate decision, and the record does not establish that the trial court made a mistake.[5] Plaintiff has failed to establish that the trial court committed plain error in any respect.

### IV. CONCLUSION

For the reasons set forth above, we affirm.

/s/ James Robert Redford
/s/ Christopher P. Yates

---

[5] We respectfully note the dissent and its concerns regarding the trial below. We conclude the proceeding was neither unfair nor violative of plaintiff's rights. Plaintiff, in seeking to introduce evidence to meet his burden of proving the elements of his claim by clear and convincing evidence, introduced his new evidence as required by statute. In response, defendant sought to rebut that evidence by lawfully admissible evidence. The trier of fact evaluated the evidence, found the rebuttal evidence more credible, and accordingly concluded plaintiff had not met his burden.