*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ICONIC REAL ESTATE, LLC,

        Plaintiff-Appellant,

v

ACM INVESTMENT GROUP, LLC,
MICHIGAN HARVEST COMPANY, LLC, and
WALLY MANJU,

        Defendants-Appellees.

UNPUBLISHED
August 25, 2022

No. 356830
Oakland Circuit Court
LC No. 2020-181883-CB

Before: LETICA, P.J., and REDFORD and RICK, JJ.

REDFORD, J. (*concurring in part and dissenting in part*).

From the majority's opinion, I concur with the conclusion that the procuring cause doctrine does not apply to this case and that the trial court correctly granted summary disposition as to Count I of plaintiff's complaint. With regards to the majority's conclusion that the trial court was mistaken when it granted summary disposition as to Count II seeking redress under a theory of promissory estoppel, I respectfully dissent. I would affirm the trial court's decisions to grant defendants summary disposition in its entirety, albeit for reasons different than those articulated by the trial court.

## I. BACKGROUND

Plaintiff is a licensed real estate broker. Defendants ACM Investment Group, LLC (ACM) and Michigan Harvest Company (MHC) are Michigan limited-liability companies. Defendant Wally Manju is the resident agent for MHC and the sole member of ACM. MHC through Manju engaged plaintiff to provide real estate brokerage services. On June 11, 2018, MHC, 725 E. Fourth St., LLC and 2505 Burdette, LLC, executed a purchase agreement for real property located at 2505 Burdette Street, Ferndale, Michigan (the Property). The June 11, 2018 purchase agreement in relevant part provided:

> 3. **Deposit:** Within five business days from the date of this Agreement [MHC] will pay $15,000 (the "Deposit") to [725 E. Fourth St., LLC, and 2505 Burdette, LLC] (i.e., by check payable to 2505 Burdette, LLC), which amount shall

be non-refundable to [MHC], but applied toward the Purchase Price in the event of closing.  In the event [MHC] fails so to pay the Deposit to [725 E. Fourth St., LLC, and 2505 Burdette, LLC] within such time frame, this Agreement shall automatically terminate and be deemed null and void and of no further force or effect.[1]

\* \* \*

10. **Broker**:  The parties acknowledge that no broker has been involved in this transaction, other than Iconic Real Estate ("Broker"), whose six percent (6%) commission shall be paid by [MHC] at Closing pursuant to a separate written agreement.[2]

\* \* \*

12. **Miscellaneous**:  This Agreement represents the entire agreement between the parties and supersedes and replaces all prior agreements or understandings. . . .This Agreement will not confer any rights or remedies upon any third party other than [725 E. Fourth St., LLC, and 2505 Burdette, LLC] and [MHC] set forth below.  Notwithstanding anything herein to the contrary, all provisions herein that are specifically identified to survive closing and/or termination of this Agreement, shall always survive closing, and/or termination of this Agreement.

The June 11, 2018 purchase agreement gave MHC 45 days to complete its investigation and inspection of the Property and required that the closing be consummated not later than 15 days after the inspection deadline.

In conjunction with the June 11, 2018 purchase agreement, MHC applied to the city of Ferndale (the City) for a permit to open a medical marihuana provisioning center, but MHC was unable to obtain the permit.  Because MHC did not obtain approval to operate a provisioning center at the Property, it did not pay the $15,000 deposit and never closed the sale transaction.  The June 11, 2018 purchase agreement, therefore, terminated and became null and void according to its terms.

On August 21, 2019, ACM entered a purchase agreement with 2505 Burdette, LLC for the purchase of the Property under a separate land contract to be executed at the closing.  This purchase agreement expressly stated that ACM and 2505 Burdette, LLC had not "used the services of a real estate broker or finder in connection with this transaction."  This agreement also substantially differed respecting its material terms from the June 11, 2018 purchase agreement.  The parties

---

[1] The parties amended the deposit provision to extend the deposit payment date until June 22, 2018, but otherwise did not amend any other provision and the original terms remained in full force and effect.

[2] Plaintiff admitted in its complaint that no separate agreement related to the payment of a real estate commission exists.

were different, the price and payment terms differed substantially, and title to the Property would not transfer to ACM until full payment of the land contract. ACM closed the transaction.

Plaintiff sued defendants for breach of contract and promissory estoppel claiming that it had an oral agreement with defendants for the payment of a real estate commission in relation to the 2019 sale of the Property. Defendants moved for summary disposition, under MCR 2.116(C)(7) and (C)(8), on the grounds that plaintiff's claims were barred by two provisions of the statute of frauds, MCL 566.132(1)(e) and (3), and that Manju should be dismissed because he could not be held personally liable for corporate entities, MHC or ACM. The trial court granted summary disposition to defendants. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). Respecting a motion under MCR 2.116(C)(7):

[T]his Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Hutchinson v Ingham Co Health Dep't*, 328 Mich App 108, 123; 935 NW2d 612 (2019) (quotation marks and citation omitted) (alteration in original).]

Similarly, "[a] motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Dell*, 312 Mich App at 739.

All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Id*. at 739-740.]

"[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Highfield Beach v Sanderson*, 331 Mich App 636, 654; 954 NW2d 231 (2020) (citations and quotation marks omitted).

"The applicability of a legal doctrine," such as promissory estoppel, "is a question of law," which this Court reviews de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). This

Court also "reviews questions of statutory interpretation de novo." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006). Relatedly, "[t]he role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citations omitted). "[W]here the statutory language is clear and unambiguous, the statute must be applied as written." *Id*. (quotation marks and citations omitted) (alterations in original).

Plaintiff argued in its motion for reconsideration that MCL 566.132(3) could not be applied retroactively to bar its claim. Because plaintiff advanced this argument for the first time in its motion for reconsideration, the argument is unpreserved. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) (citations omitted). However, whether MCL 566.132(3) applies to this case is a question of law, and "the facts necessary for its resolution have been presented." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014) ("[U]npreserved error[s] may be considered if (1) failure to do so would result in manifest injustice, (2) consideration is necessary for a proper determination of the case, or (3) the issue involves a question of law, and the facts necessary for its resolution have been presented."). Thus, this Court may consider the argument regarding the retroactivity of MCL 566.132(3). Unpreserved errors are reviewed for plain error. *Total Armored Car Serv, Inc v Dep't of Treasury*, 325 Mich App 403, 412; 926 NW2d 276 (2018). "To establish an entitlement to relief based on plain error, the injured party must show (1) that an error occurred, (2) that the error was plain and (3) that the plain error affected [its] substantial rights." *Id*. (quotation marks and citation omitted) (alteration in original). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## III. ANALYSIS

### A. MCL 566.132(1)(e)

Plaintiff argues that MCL 566.132(1)(e) does not bar its claims because the June 11, 2018 purchase agreement required defendants to pay plaintiff's real estate commission irrespective of that agreement's terms. I disagree.

MCL 566.132(1)(e) provides:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:

> (e) An agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate.

"The statute of frauds does not require that the entire agreement be in writing, but only requires that 'a note or memorandum of the agreement' is in writing and signed." *Kelley-Stehney*

*& Assoc v MacDonald's Indus Prod, Inc*, 265 Mich App 105, 111; 693 NW2d 394 (2005), citing MCL 566.132(1). "There are few, if any, specific and uniform requirements. . . . Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute" is reviewed on a case-by-case basis. *Kelley-Stehney & Assocs*, 265 Mich App at 111-112, quoting *Opdyke Ins Co v Norris Grain Co*, 413 Mich 354, 368; 320 NW2 836 (1982) (quotation marks and citations omitted).

In interpreting a contract, this Court's goal is to discern the intent of the parties. *Highfield Beach*, 331 Mich App at 654. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. "[A] court must construe and apply unambiguous contract provisions as written." *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 403; 927 NW2d 717 (2018) (citations and quotation marks omitted). " 'Courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.' " *AFSCME Int'l Union v Bank One*, 267 Mich App 281, 284; 705 NW2d 355 (2005), quoting *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). Relatedly, "[c]ontracts must be construed as a whole, giving effect to all provisions." *Edmore v Crystal Automation Sys Inc,* 322 Mich App 244, 263; 911 NW2d 241 (2017).

Plaintiff relies on the June 11, 2018 purchase agreement as having memorialized all defendants' promise to pay plaintiff a commission on the sale of the Property. That agreement, however, is a contract between MHC and the sellers of the Property. Paragraph 10 of the June 11, 2018 purchase agreement specifically stated that MHC would pay plaintiff a 6% commission at closing. Although that provision references that the commission agreement would be in a separate written and signed agreement, a writing is not required to "contain every detail of the agreement" to satisfy the statute of frauds. *Kelley-Stehney & Assocs*, 265 Mich App at 114 (citation omitted). The June 11, 2018 purchase agreement generally contained the material terms of the alleged commission agreement between MHC and plaintiff, and MHC signed that purchase agreement. Accordingly, MHC's execution of the purchase agreement satisfied MCL 566.132(1)(e) insofar as it reflects MHC's promise to pay plaintiff's real estate commission in relation to the specified transaction if it closed.

It is undisputed that MHC did not pay the required deposit and it did not close the Property sale transaction under the June 11, 2018 agreement. Under ¶ 3 of the June 11, 2018 purchase agreement, "[i]n the event [MHC] fails so to pay the Deposit to [725 E. Fourth St., LLC, and 2505 Burdette, LLC] within such time frame, this Agreement shall automatically terminate and be deemed null and void and of no further force or effect." MHC's failure to pay the deposit within the time allowed by the purchase agreement, according to the clear and unambiguous terms of the June 11, 2018 agreement, rendered that agreement null and void.

While ¶ 12 of the June 11, 2018 purchase agreement allows provisions of the agreement to survive the termination of that agreement, it specified that such survival provisions must be "specifically identified to survive closing and/or termination." Paragraph 10, which pertains to the payment of a real estate commission, did not expressly provide for survival after termination of the June 11, 2018 purchase agreement. Thus, while the June 11, 2018 purchase agreement does satisfy the statute of frauds respecting that particular transaction, MHC's promise to pay a real estate commission to plaintiff did not survive the termination of the June 11, 2018 purchase

-5-

agreement. As of June 22, 2018, when MHC failed to pay the deposit, no written agreement or promise to pay plaintiff a real estate commission survived. Moreover, MHC's failure to close that transaction nullified plaintiff's entitlement to any commission.

The August 21, 2019 purchase agreement specifically stated "[2505 Burdette, LLC] and [ACM] each represent and warrant to the other that they have not used the services of a real estate broker or finder in connection with this transaction." Plaintiff's claim to entitlement to a commission based on that transaction is barred by the statute of frauds, MCL 566.132(1)(e), because neither MHC nor plaintiff were parties to that transaction.

The record indicates that the June 11, 2018 purchase agreement terminated by its express terms over a year before the 2019 agreement existed and the later closing occurred. No provision in the June 11, 2018 purchase agreement contractually bound any defendant to its commission payment terms after that agreement's termination. The commission terms along with all other provisions of that contract expired at the time of the contract's termination. The record does not indicate a perpetual agreement (either oral or in writing) between any of the parties for the payment of a commission should a later sale and closing occur. The trial court, therefore, did not err in granting summary disposition to defendants respecting plaintiff's breach-of-contract claim.

## B. PROCURING-CAUSE AND PROMISSORY ESTOPPEL CLAIMS

Plaintiff argues that it is still entitled to a real estate commission from defendants under the procuring-cause doctrine even though ACM purchased the Property more than one year after the June 11, 2018 purchase agreement terminated. I disagree.

Plaintiff relies on *Reed v Kurdziel*, 352 Mich 287, 294-295; 89 NW2d 479 (1958) to contend that it is entitled to a commission on the August 2019 sale of the Property because it claims that it was the procuring cause of the sale. In *Reed*, our Supreme Court stated:

> It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent's or broker's services without compensation and imposing upon the principal, regardless of the type of agency or contract, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent. In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. In Michigan the rule goes further to provide if the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause. [*Id.* (citations omitted).]

"The procuring-cause doctrine applies when the parties have a contract governing the payment of sales commissions, but the contract is silent regarding the payment of posttermination commissions." *KBD & Assocs, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 673; 816 NW2d 464 (2012), citing *Reed*, 352 Mich at 295. "The basic principle behind the

-6-

procuring-cause doctrine is the notion of fair dealing. It is unfair to allow a principal to terminate an agent and avoid paying commissions on sales that the agent procured." *Id*. (citation omitted).

MHC executed the June 11, 2018 purchase agreement which expressly provided for the payment of a real estate commission to plaintiff upon closing of that transaction. That agreement did not specify the payment of a commission after its termination whereupon its terms were deemed null and void and of no further force or effect. Construing the provisions of the June 11, 2018 purchase agreement as a whole, plaintiff would be permitted to receive a commission from MHC after termination of the agreement only if ¶ 10 specifically identified that the payment of a commission survived the termination of the agreement. *Edmore,* 322 Mich App at 263. The agreement also specifically stated it represented the entire agreement between the parties and superseded and replaced all prior agreements or understandings. Because ¶ 10 and no other provision in the June 11, 2018 purchase agreement specifically identified that the commission provision would survive termination, plaintiff is not entitled to receive a commission after the purchase agreement terminated on June 22, 2018. Plaintiff's broker agreement, therefore, terminated and plaintiff has produced nothing to establish that a perpetual broker agreement existed. The record reflects that plaintiff knew the terms of the June 11, 2018 purchase agreement and apparently chose not to enter a separate written agreement concerning the payment of a commission by MHC or any other defendant. The record also indicates that plaintiff became aware of ACM's interest in the Property but did nothing to facilitate a sale between any seller and ACM.

Moreover, ACM, a separate entity from MHC purchased the Property in August of 2019 pursuant to a separate and distinct purchase agreement and land contract more than a year after the June 11, 2018 purchase agreement terminated by its own express terms. Indeed, the August 21, 2019 purchase agreement contained completely different terms, including a different price, different parties, different closing requirements, and different payment terms. The August 21, 2019 purchase agreement also contained a provision indicating that the parties did not use a broker in securing the purchase of the Property. Further, ACM purchased the Property after MHC's transaction failed. Nothing in the record establishes or supports an inference that MHC caused its purchase agreement to terminate simply to avoid paying plaintiff a real estate commission. There is no evidence or allegation that any defendant acted fraudulently or in bad faith to evade a commission payment obligation. Under the facts of this case, the procuring-cause doctrine is inapplicable. *KBD & Assocs, Inc*, 295 Mich App at 673. Therefore, the trial court did not err by granting defendants summary disposition.

Similarly, the automatic termination provision that rendered the June 11, 2018 purchase agreement null and void coupled with the provision that required an express statement of the items that would survive closing or termination defeat plaintiff's promissory estoppel claim. MHC expressly contracted for the result that occurred and no evidence establishes that plaintiff contracted otherwise with defendants. Courts cannot rewrite contracts and make them better than the terms to which the parties themselves agreed. The legal principle that " 'unambiguous contracts are not open to judicial construction and must be *enforced as written*' " is "grounded in the rationale that the judiciary ought not interfere with the right of individuals to 'arrange their affairs via contract.' " *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 716; 916 NW2d 218 (2018), quoting *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). Certainly, had plaintiff desired otherwise, it could have negotiated and expressly contracted with one or all of the defendants a brokerage agreement. Further, the record does not

reflect a contractual relationship between ACM and plaintiff requiring it to pay a real estate commission to plaintiff nor is there any indication that ACM made a promise to or oral contract with plaintiff.

Further, the record indicates that MHC and ACM, both limited-liability companies, sought to purchase the Property. Plaintiff's allegations and arguments reveal that Manju did not act in his individual personal capacity but on behalf of the two companies. Michigan recognizes the general principle that courts respect separate entities. *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 650; 364 NW2d 670 (1984). Reinforcing this concept is Michigan's Limited Liability Company Act, MCL 450.4501 *et seq.*, which provides that "a person that is a member or manager, or both, of a limited liability company is not liable for the acts, debts, or obligations of the limited liability company." MCL 450.4501(4). Accordingly, plaintiff's claims, to the extent they are asserted against Manju, fail as a matter of law.[3]

To the extent there was an agreement to pay brokerage fees between plaintiff and MHC, a separate and distinct legal entity from the other defendants in this matter, entered that contract on June 11, 2018 and by its own terms it became null and void. Plaintiff was entitled to no fees from the separate and distinct transaction between different parties that was consummated on entirely different terms and conditions and based on an August 21, 2019 contract.

Therefore, I would affirm the trial court's grant of summary disposition for defendants.

/s/ James Robert Redford

---

[3] I understand that the trial court, *inter alia,* in granting summary disposition of Count II concluded that MCL 566.132(3) applied retroactively. Because I conclude that the granting of summary disposition was correct for the reasons set forth above regardless of whether or not the amendment to the statute applied retroactively, I decline to specifically address this question. I would affirm the trial court's order granting defendant's motion for summary disposition. The trial court reached the right result, albeit, in part, for the wrong reason. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).